**Case No. 26-3548**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**
**Plaintiff-Appellee**

**v.**

**CHARIECE CHEW,**
**Defendant-Appellant**

---

**On Appeal from the United States District Court**
**for the Northern District of Ohio**

---

# BRIEF OF DEFENDANT-APPELLANT

---


/s/ Marcus S. Sidoti
MARCUS S. SIDOTI, 0077476
FG+G LLC
50 Public Square
Cleveland, Ohio 44113
(216) 241-1430
Attorney for Defendant-Appellant
marcus@fggfirm.com

## STATEMENT REGARDING ORAL ARGUMENT

Chariece Chew requests oral argument under Federal Rule of Appellate Procedure 34(a)(1) and Sixth Circuit Rule 34(a). This appeal turns on a trial record that argument would help the Court examine: what the government offered to prove possession of four firearms that were never recovered, and the sequence by which the jury learned of Mr. Chew's supervised release and of a firearm recovery the District Court had excluded. Argument would also assist the Court in determining whether the ineffective-assistance claim is properly resolved on direct appeal.

## TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT

STATEMENT OF JURISDICTION .................................................................. 1

STATEMENT OF THE ISSUES .................................................................. 1

INTRODUCTION .................................................................................. 2

STATEMENT OF THE CASE .................................................................... 4

A. Procedural Background ........................................................ 4

B. Factual Background ............................................................ 6

SUMMARY OF ARGUMENT .................................................................. 19

ARGUMENT ........................................................................................ 22

I. The evidence was insufficient to sustain the verdicts on Counts 1, 3, 4, and 6, and the District Court erred in denying Mr. Chew's motion for judgment of acquittal. ........................................................ 22

A. Standard of Review. ................................................ 22

B. The Government failed to prove that Mr. Chew possessed any firearm. ........................................................................ 23

II. The District Court abused its discretion in denying Mr. Chew's motion for a mistrial after the case agent told the jury that Mr. Chew was on federal supervised release. ........................................ 30

A. Standard of Review. ................................................ 30

B. The parties and the District Court built an elaborate structure to keep Mr. Chew's criminal history from the jury, and the case agent dismantled it in a single answer. No immediate curative instruction followed, and the general charge delivered two days later did not substitute for one. ........................................ 30

III. Mr. Chew was denied the effective assistance of counsel when trial counsel elicited testimony that no firearms had been recovered, opening the door to evidence the District Court had excluded before trial. 36

A. This Court should reach the claim, because the record is adequately developed. 36

B. Counsel's performance fell below an objective standard of reasonableness and prejudiced the defense. 37

IV. The District Court erred in denying Mr. Chew's motion for a new trial, where the cumulative effect of the errors at trial rendered the proceeding fundamentally unfair. 41

A. Standard of Review. 41

B. The errors, taken together, rendered the trial fundamentally unfair. 41

CONCLUSION 43

CERTIFICATE OF COMPLIANCE 44

CERTIFICATE OF SERVICE 45

ADDENDUM

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS 47

## TABLE OF AUTHORITIES

**CASES:** **PAGE**


Campbell v. United States, 364 F.3d 727 (6th Cir. 2004) .............................41

Davenport v. Rapelje, No. 10-13567, 2013 WL 2318841, at *7 (E.D. Mich. May 28, 2013) ..........................................................................................38

Diggle v. Sheldon, No. 3:13-CV-00442, 2014 WL 11206626, at *15-16 (N.D. Ohio May 21, 2014), *report and recommendation adopted*, 2016 WL 1223217 (N.D. Ohio Mar. 29, 2016) ..................................................39

Jackson v. Virginia, 443 U.S. 307 (1979).......................................................23

Jones v. Harry, 405 F. App'x 23 (6th Cir. 2010) ..........................................38

Massaro v. United States, 538 U.S. 500 (2003).............................................36

Romstadt v. Allstate Ins. Co., 59 F.3d 608 (6th Cir. 1995)...........................30

Strickland v. Washington, 466 U.S. 668 (1984).............................................37, 39

United States v. Bailey, 553 F.3d 940 (6th Cir. 2009) ..................................26

United States v. Craven, 478 F.2d 1329 (6th Cir. 1973) ...............................23

United States v. Crump, 65 F.4th 287 (6th Cir. 2023)...................................23, 25

United States v. Fonville, 652 F. App’x 383 (6th Cir. 2016) ........................33, 34, 35, 36, 39

United States v. Forrest, 17 F.3d 916 (6th Cir. 1994) ...................................30, 33, 36

United States v. Gardner, 417 F.3d 541 (6th Cir. 2005)................................37

United States v. Grubbs, 506 F.3d 434 (6th Cir. 2007).................................23, 24, 27, 28, 29

United States v. Hernandez, 873 F.2d 925 (6th Cir. 1989) ...........................33

United States v. Hines, 398 F.3d 713 (6th Cir. 2005) ...................................41

United States v. Howard, 621 F.3d 433 (6th Cir. 2010)................................41

United States v. Lee, 359 F.3d 412 (6th Cir. 2004).......................................22

United States v. M/G Transport Servs., Inc., 173 F.3d 584 (6th Cir. 1999) ..22

United States v. Martin, 375 F.2d 956 (6th Cir. 1967)..................................24, 27

United States v. Massengill, 769 F. App'x 342 (6th Cir. 2019) .................... 32, 34, 35

United States v. Moore, 376 F.3d 570 (6th Cir. 2004) .................................. 33

United States v. Oakland Physicians Med. Ctr., LLC, 44 F.4th 565 (6th Cir. 2022) .................................................................................... 30

United States v. Pierce, 62 F.3d 818 (6th Cir. 1995) ..................................... 41

United States v. Robinson, 99 F.4th 344 (6th Cir. 2024) ................................ 30

United States v. Schreane, 331 F.3d 548 (6th Cir. 2003) ............................... 24, 29

United States v. Spencer, 364 F. App'x 197 (6th Cir. 2010) .......................... 25, 26

United States v. Stapleton, 297 F. App'x 413 (6th Cir. 2008) ........................ 33, 35

United States v. Trujillo, 376 F.3d 593 (6th Cir. 2004) ................................. 41

United States v. Wheaton, 517 F.3d 350 (6th Cir. 2008) ............................... 41

United States v. Williams, 612 F.3d 500 (6th Cir. 2010) ............................... 36

Zuern v. Tate, 336 F.3d 478 (6th Cir. 2003) .................................................. 18, 30, 32, 34, 36

**STATUTES:**

18 U.S.C. § 2 .................................................................................... 4

18 U.S.C. § 922(a)(6) ......................................................................... 4

18 U.S.C. § 922(g)(1) ......................................................................... 4, 23, 31

18 U.S.C. § 924(a)(8) ......................................................................... 4, 23

18 U.S.C. § 932(b)(1) ......................................................................... 4

18 U.S.C. § 932(c)(1) ......................................................................... 4

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. § 3742 ................................................................................ 1

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 2255 ................................................................................ 36

**RULES:**

Fed. R. App. P. 32(a)(5) ..................................................................... 44

Fed. R. App. P. 32(a)(6) .......................................................................... 44
Fed. R. App. P. 32(a)(7)(B)(i) .......................................................................... 44
Fed. R. App. P. 32(f) .......................................................................... 44
Fed. R. Crim. P. 29 .......................................................................... 5, 22
Fed. R. Crim. P. 33 .......................................................................... 22, 37, 41
6 Cir. R. 32(b) .......................................................................... 44

## STATEMENT OF JURISDICTION

The District Court had original jurisdiction under 18 U.S.C. 3231. It entered final judgment against Defendant-Appellant (hereinafter "Mr. Chew") on June 9, 2026. (Judgment, R. 111, Page ID 2182). Appellant filed a timely notice of appeal on June 18, 2026. (Notice of Appeal, R. 114, Page ID 2196). This Court has jurisdiction under 18 U.S.C. 3742 and 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

1. Whether the evidence presented at trial was insufficient to sustain the jury's verdicts on Counts 1, 3, 4, and 6, such that the District Court erred in denying Mr. Chew's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29.

2. Whether the District Court abused its discretion in denying Mr. Chew's motion for a mistrial where the case agent testified that Mr. Chew was on federal supervised release, no immediate curative instruction was given, and jurors had already submitted written questions reflecting their interest in Mr. Chew's custodial history and in the nature of his relationship with two government witnesses.

3. Whether Mr. Chew was denied his Sixth Amendment right to the effective assistance of trial counsel where counsel elicited testimony on cross-examination that no firearms had been recovered and thereby opened the door to evidence the District Court had excluded before trial.

4. Whether the District Court abused its discretion in denying Mr. Chew's motion for new trial.

## INTRODUCTION

The government's theory at trial was that Chariece Chew traveled from California to Ohio in February 2024 and directed Kathryn Coe to purchase four Romarm Draco pistols on his behalf, two from the Cleveland Armory on February 22 and two from the Parma Gun Shop on February 29. Mr. Chew never entered either store. He never signed a Form 4473. No firearm was ever recovered from his person, his residence, or any vehicle or home he was connected to. The government's proof that he possessed those firearms rested on the account of Ms. Coe, a cooperating co-defendant who had pleaded guilty and agreed to testify, together with cell site records establishing only that a telephone traveled between certain locations on certain days.

Because the government was required to prove a prior conviction as an element of the felon-in-possession counts, the parties stipulated to that fact before trial in order to keep the details of Mr. Chew's criminal history away from the jury. The District Court and both parties then attempted to preserve that protection during trial. Ashlee Frank was permitted to describe Alan Johnson's supervision without disclosing that Mr. Chew had been in custody with him; Manuel Perez, Mr. Chew's federal probation officer, was presented to the jury only as a man

"employed with the government" who knew Mr. Chew for unstated reasons. Jurors noticed the gap. They submitted written questions asking whether Mr. Chew and Mr. Johnson had been imprisoned together and asking in what capacity Mr. Perez worked with Mr. Chew questions the Court and counsel agreed could not be put to the witnesses.

The answer arrived anyway. On the third day of trial, Special Agent Cory Miles testified that a law enforcement query revealed Mr. Chew "was on supervised release." The defense objected immediately and the Court sustained the objection. No instruction to disregard followed. Instead, the jury was excused for the evening and sent home with the disclosure intact, and the motion for mistrial was argued and denied the next morning. The curative instruction the jury eventually received came at the close of a five-day trial, embedded in the general charge, and never referred to Agent Miles's testimony at all.

A second exclusion failed the same way. The District Court had granted Mr. Chew's motion in limine to bar a late-disclosed ATF trace report reflecting that one of the four firearms was recovered in California, cautioning the parties against testimony that would invite the jury to construct "fictional facts" about the recovery. Trial counsel then asked Agent Miles a series of questions establishing that no firearms had been seized and that the ATF possessed none of them. The Court found the door opened and permitted the government to elicit that a Draco

pistol connected to this case had been recovered in Berkeley, California. In closing, the prosecutor told the jury that a gun was recovered in California and asked where Mr. Chew was from. The single fact the Court had excluded became the government's closing argument on possession.

## STATEMENT OF THE CASE

### A. Procedural Background.

Mr. Chew was charged in a six-count superseding Indictment with firearms offenses. (Superseding Indictment, R. 27, PageID 187-191). Counts 1 and 4 concern alleged straw purchases of firearms on or about February 22, 2024 and February 29, 2024, respectively, and in violation of 18 U.S.C. § 932(b)(1) and (c)(1). Counts 2 and 5 allege that on those same dates Mr. Chew aided and abetted false statements in the acquisition of firearms, in violation of 18 U.S.C. §§ 922(a)(6) and 2. Counts 3 and 6 allege unlawful possession of a firearm on those same dates, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Mr. Chew pled not guilty to all charges.

This matter proceeded to a jury trial on August 11, 2025. Trial counsel for Mr. Chew filed a motion in limine concerning the late disclosure of a firearm trace report by the Government that recorded the recovery of one of the firearms involved in this case in California. (Defense Motion in Limine, R. 68, PageID 519). Trial Counsel argued that the information was provided too close to the trial

date, which hindered their ability to prepare a defense. (Defense Motion in Limine, R. 68, PageID 520; August 11, 2025 Transcript of Trial Proceedings, R. 85, PageID 712). The defense expressed concerns about the trace report's implications, suggesting it could have influenced their trial strategy and raised questions about the government's diligence in disclosing evidence. (R. 85, PageID 713). The Court considered whether a continuance or exclusion of the evidence was appropriate, ultimately opting to exclude the document, at counsel for Mr. Chew's suggestion, due to its late disclosure and speculative nature. (*Id.* at PageID 721). The Court emphasized the importance of not creating fictional facts in the courtroom and instructed the parties to avoid granular questioning about the recovered firearm. (*Id.* at PageID 723-724).

Trial commenced on August 11, 2025, and ended on August 15, 2025. At the close of the Government's case, the Court addressed and denied Defense's Rule 29 motion. (August 15, 2025 Transcript of Trial Proceedings, R.90, PageID 1796). The Government rested and the defense also rested. (*Id.* at PageID 1799-1800). On August 15, 2025, the jury returned a verdict of guilty on Count 1 (conspiracy in the purchase of two firearms on or about February 22, 2024), Count 3 (felon in possession on or about February 22, 2024), Count 4 (conspiracy in the purchase of two firearms on or about February 29, 2024), and Count 6 (felon in possession on or about February 29, 2024). (*Id.* at PageID 1920-1923). The jury found the

Defendant not guilty on Count 2 (aiding and abetting false statements on or about February 22, 2024) and Count 5 (aiding and abetting false statements on or about February 29, 2024). (*Id.*).

Trial counsel moved to withdraw as counsel of record for Mr. Chew on September 23, 2025. (Motion to Withdraw, R. 91, PageID 1929). A hearing was held on September 29, 2025, and the motion to withdraw was granted. (See Docket, Case No. 1:24CR00231). Undersigned counsel was appointed on October 1, 2025. (*Id.*). Represented by new counsel, Mr. Chew filed a motion for new trial on January 9, 2026. (Motion for New Trial, R. 99, PageID 2039). The Government responded on January 30, 2026. (Response in Opposition to Motion for New Trial, R. 101, PageID 2065). The District Court denied the motion on May 6, 2026. (Order Denying New Trial Motion, R. 102, PageID 2092).

Mr. Chew was sentenced to concurrent terms of 180 months on each count, three years of supervised release, and a $400 special assessment. (Criminal Judgment, R. 111, PageID 2182).

**B. Factual Background.**

This case stems from allegations that, on or about February 22, 2024, and February 29, 2024, in the Northern District of Ohio, Mr. Chew and a co-defendant engaged in straw purchases of firearms from federally licensed firearms dealers. (R. 27, PageID 187-191). The government alleged that, on February 22, 2024, the

defendants conspired to purchase two Romarm Micro Draco pistols on behalf of Mr. Chew, knowing that he had previously been convicted of a felony offense punishable by more than one year of imprisonment. (*Id.*). The government further alleged that, in connection with that transaction, false statements were made on ATF Forms 4473 representing that the co-defendant was the actual buyer of the firearms when she was not. (*Id.*). The indictment also alleged that Mr. Chew knowingly possessed the firearms involved in the February 22 transaction despite his prior felony conviction. (*Id.*). The government alleged similar conduct arising from a second firearms transaction on or about February 29, 2024, including an additional alleged straw purchase, false statements to a federally licensed firearms dealer, and unlawful possession of firearms by Mr. Chew. (*Id.*).

The Government called nine (9) witnesses in their case in chief. The Defense did not call any witnesses. For organizational purposes and ease of reading each witness's testimony will be summarized for the Court's consideration.

**Alan Johnson.** Alan Johnson testified that he resided in Akron, Ohio, and was employed in cooking and carpentry work at the time relevant to the case. (August 12, 2025 Transcript of Trial Proceedings, R. 86, PageID 958). He stated that he had lived in Akron for several years but is originally from California. (*Id.*). Mr. Johnson testified that he had known Chariece Chew, also known to him as "Chewy," from California for several years prior to the events at issue. (*Id.* at

PageID 959). Mr. Johnson testified that around his birthday in early March, Mr. Chew traveled to Akron to visit him. (*Id.* at PageID 960). He stated that he picked Mr. Chew up from the Greyhound station in Akron. (*Id.* at PageID 961). Mr. Johnson testified that during this period, Mr. Chew stayed at his house for approximately two weeks, and Mr. Johnson would let Mr. Chew borrow his car, which was a "tan-ish gold" Tahoe. (*Id.).* Mr. Johnson testified on cross-examination that he never discussed buying guns with Mr. Chew, never saw Mr. Chew with a firearm, and never possessed or handled any firearms himself during the relevant time period. (*Id.* at PageID 966–967). Mr. Johnson was shown an image of the boxes that the Government alleged the firearms were stored in, and Mr. Johnson stated he had never seen those boxes before. (*Id*. at PageID 968). He further testified that no firearms were ever present in his Akron residence or his vehicle while Mr. Chew stayed with him. (*Id.* at PageID 967–968). He confirmed that the Government conducted a "walk-through" of his house as part of his probation sometime in March 2024, and no firearms were found. (*Id.* at PageID 972).

**Ashlee Frank**. Ashlee Frank is employed as a senior probation officer for the U.S. District Court for the Northern District of Ohio, working with the U.S. Pretrial Services and Probation Office. (*Id.* at PageID 982). Her duties include supervising individuals on post-conviction supervision, ensuring they comply with

court-imposed conditions. (*Id.*). She explained that individuals under supervision must adhere to mandatory, standard, and special conditions, which may include home visits and searches if contraband is observed in plain view. (*Id.* at PageID 983). On March 14, 2024, Ms. Frank conducted a plain view walk-through of Alan Johnson's residence, which involved an unannounced home visit and inspection of each room in his apartment. (*Id.* at PageID 983-984). During this inspection, she did not observe any firearms. (*Id.* at PageID 984). Ms. Frank has been supervising Mr. Johnson since May 2023. (*Id.*). She confirmed that Mr. Johnson and Mr. Chew were detained together in California and lived in close proximity in Oregon. (*Id.* at PageID 984-985). Ms. Frank stated she had no reasonable suspicion of Mr. Johnson violating his conditions during her inspection. (*Id.* at PageID 986). She confirmed she did not know Mr. Chew and had no information about his activities related to a straw purchase. (*Id.* at PageID 986-987). Following Ms. Frank's testimony, jurors submitted written questions asking whether Mr. Chew and Mr. Johnson had been imprisoned together. (*Id.* at PageID 993-994). The Court and counsel agreed that the question could not be put to the witness, and it went unanswered. (*Id.*).

**Kathryn Coe.** Kathryn Coe testified that she resides in Medina, Ohio, and works as a bookkeeper, handling payroll, taxes, accounts receivable, and accounts payable, a role she has held for nearly 40 years. (*Id.* at PageID 996). She lives with

her younger sister and has been doing so for the past eleven years. (*Id.* at PageID 997). In February 2024, Ms. Coe met a man named Charles through the Facebook dating app. (*Id.*). After communicating for over a week, they agreed to meet at a house in Akron where Charles was staying, which he claimed belonged to his brother. (*Id.* at PageID 1000). After the initial meeting, she met Charles again, and they went to Cleveland, where Charles discussed purchasing guns for a security business he was starting. (*Id.* at PageID 1004). Charles could not buy the guns himself and asked Ms. Coe to purchase them, providing her with cash for the transaction. (*Id.* at PageID 1004-1005). On February 22, 2024, Ms. Coe drove Charles to the Cleveland Armory, where he stayed in the car while she went inside to purchase two Draco Mini guns with cash he provided. (*Id.* at PageID 1006). Ms. Coe was told by Charles to buy new guns, and she communicated with him via text during the purchase. (*Id.* at PageID 1009). After purchasing the guns, Ms. Coe returned to Akron, where Charles took the guns into the house. (*Id.* at PageID 1027). Ms. Coe testified that Charles contacted her again to purchase more guns, and on February 29, 2024, they attempted to buy more Dracos at the Cleveland Armory, but the sale could not be completed due to computer issues. (*Id.* at PageID 1028-1030). They then went to a gun store in Parma, where Ms. Coe purchased a Mini Draco and a Micro Draco with money provided by Charles. (*Id.* at PageID 1040-1041). Ms. Coe admitted to signing forms falsely stating she was the actual

buyer of the firearms. (*Id.* at PageID 1020). She was later approached by Agent Cory Miles from the Bureau of Alcohol, Tobacco, and Firearms, to whom she admitted buying the guns for Charles. (*Id.* at PageID 1049). Ms. Coe was indicted for straw purchasing firearms and making false statements during the purchase. (*Id.* at PageID 1072) She entered a plea agreement and agreed to testify. (*Id.* at PageID 1072). On cross-examination, Ms. Coe testified that she told Special Agent Cory Miles that has had memory lapses where she does not remember certain windows of time that last up to a month that are brought on by extreme stress and anxiety. (*Id.* at PageID 1117;1120).

**George Cervantes.** George Cervantes testified that he is employed as a paralegal by Flix SE North America Corporation, which owns Greyhound. (August 13, 2025 Transcript of Trial Proceedings, R. 87, PageID 1231-1232). Mr. Cervantes received a request from Special Agent Miles regarding an individual named Chariece Chew in February 2025, and he responded with travel records for February-March 2024. (*Id.* at PageID 1232-1233). The records concerned travels from California to Akron, Ohio, and included ticketing and boarding information. (*Id.* at PageID 1233). He explained that Greyhound tickets contain origin and destination information and can consist of multiple legs, with each leg specified on the ticket. (*Id.* at PageID 1235-1236). He detailed the process of boarding a Greyhound bus, noting that passengers need a ticket for scanning but do not

require a driver's license or have their bags checked. (*Id.* at PageID 1234-1235). Mr. Cervantes testified that Melissa Madiva was the purchaser of the ticket in the name of Chariece Chew. (*Id.* at PageID 1240). Mr. Cervantes additionally testified that a return ticket was purchased, under a different phone number, with a departure from Akron, Ohio on March 7th and arriving in Modesto, California on March 16th. (*Id.* at PageID 1250-1253). On cross-examination, Mr. Cervantes testified that he has no independent knowledge as to who bought the tickets or boarded the buses, and reiterated that no identification is required to board the bus. (*Id.* at PageID 1255-1256).

**Manuel Perez.** Manuel Perez, "employed with the Government" in Oakland, California, testified about his interactions with Chariece Chew, whom he has known since early January 2024. (*Id*. at PageID 1264). Mr. Perez regularly communicated with Mr. Chew, visiting his home and speaking via phone, and he confirmed Mr. Chew's phone number as 925-497-5458. (*Id*.) In 2024, an ATF agent contacted Mr. Perez to verify his knowledge of Chew, identify him in a photo, and confirm his address as 27939 Thornton Court, Hayward, California. (*Id*. at PageID 1266). Mr. Perez identified Chew from a photograph shown by ATF Agent Cory Miles, noting Mr. Chew's glasses and ponytail. (*Id*. at PageID 1267). He attempted to contact Mr. Chew multiple times by phone and scheduled a home visit on April 18, 2024, at Mr. Chew's reported address, where he observed Mr.

Chew's mother and two children. (*Id*. at PageID 1268). During cross-examination, Mr. Perez stated he was unaware of phone number 510-746-6038 or aliases associated with Mr. Chew. (*Id*. at PageID 1270). He conducted a walk-through home inspection on April 18, 2024, without encountering any guns or observing Chew with a gun. (*Id*. at 1270-1271). Following Mr. Perez's testimony, jurors submitted a written question asking in what capacity Mr. Perez worked with Mr. Chew. (*Id.* at PageID 1272-1273). The Court and counsel agreed that this question likewise could not be put to the witness, and the jury received no explanation of the basis for Mr. Perez's relationship with Mr. Chew. (*Id.*).

**Jason Bowser.** Jason Bowser testified that he is employed at Cleveland Armory, a gun store located in Valley View. (*Id*. at PageID 1276). The Cleveland Armory holds a Federal Firearms License (FFL), which is necessary for selling guns in the United States. Bowser explained the process for purchasing a firearm at the store, which involves verifying the customer's ID, completing an ATF Form 4473, and conducting a background check through the FBI's NICS system. (*Id*. at PageID 1277-1278). A person must be purchasing the firearm for themselves, and state the same on the ATF Form 4473, otherwise they will not be sold a firearm. (*Id*. at PageID 1278-1279). Mr. Bowser sold two Mini Draco firearms to Ms. Coe on Febraury 22, 2024. (*Id*. at PageID 1280). Mr. Bowser's boss provided the ATF with the surveillance footage of the sale from the store. (*Id*. at PageID 1281-1282).

Ms. Coe filled out the ATF Form 4473 and indicated that she was purchasing the firearms for herself. (*Id*. at PageID 1292; 1297). After the sale, Mr. Bowser carried the boxes with the firearms to Ms. Coe's car and put them in the backseat for her. (*Id*. at PageID 1301). He did not see anyone else in the car. (*Id*.). Ms. Coe came back to the store about a week later for two more Dracos, but another sale could not be completed because the FBI system was down. (*Id*. at PageID 1306; 1309). Surveillance video from the parking lot shows Ms. Coe get into the passenger seat of a vehicle and leave. (*Id*. at PageID 1310-1311). During the February 22nd transaction, Mr. Bowser testified that Ms. Coe had no reason to believe that Ms. Coe was not buying the guns for herself. (*Id*. at PageID 1319). Mr. Bowser testified that Ms. Coe coming back on February 29th for more guns was suspicious, so after Ms. Coe left he wrote a note for his boss to pull the video from the previous week so it could be reviewed and given to the ATF. (*Id*. at PageID 1321-1322).

**Robert Little.** Robert Little, an intelligence research specialist with the ATF, testified about his role in analyzing information for investigations. (*Id*. at PageID 1327). Mr. Little's work involves analyzing telecommunication records and geospatial intelligence to identify patterns and movements. (*Id*. at PageID 1328). He was asked to analyze cellular phone data related to a specific number, 510-746-6038, which he was able to determine had a subscriber name, James House, with

the address of 2595 Mitch AP 8, Hayward, California, 94544. (*Id*. at PageID 1330; 1342). Mr. Little explained the types of data he reviewed, including call detail records (CDR), text messaging information, and data sessions, which help determine the location and communication patterns of the phone. (*Id*. at PageID 1330-1336). He also discussed the use of timing advance data to estimate the distance of a device from a cell tower. (*Id*. at PageID 1339-1340). Mr. Little used Greyhound bus ticket information provided to him to correlate travel data with cell tower usage, creating a map overlay to illustrate the travel route and cell tower connections. (*Id*. at PageID 1347). Mr. Little confirmed that the cellphone number 510-746-6038, registered to James House, was using the towers. (*Id*. at PageID 1359). Mr. Little explained that the data sessions and tower connections were consistent with the Greyhound bus itinerary, Alan Johnson's residence, and the gun stores, as well as testifying that a number of text messages were exchanged between the 510 phone number and phone number 440-666-2685. (*Id*. at PageID 1347-1393; 1400). During cross-examination, Mr. Little explained that tower location information provides a general area rather than a precise location, and the data is used to show patterns of movement. (*Id*. at PageID 1396-1397). He also confirmed that the data presented was tied to the 510- phone number and not to any specific individual holding the phone. (*Id*. at PageID 1400). On re-cross, Mr. Little

confirmed that he reviewed the phone extraction from Ms. Coe's phone, which appeared to have most pertinent information deleted. (*Id*. at PageID 1404).

**Dan Jambor.** Dan Jambor owns Parma Gun Shop. (*Id*. at PageID 1412). Mr. Jambor was present and participated in the sale of guns to Ms. Coe on February 29, 2024. (*Id*. at PageID 1413). Ms. Coe ultimately decided to buy one Micro Draco and one Mini Draco. (*Id*. at PageID 1415). She represented that she was purchasing the guns for herself. (*Id*.). Ms. Coe passed the background check, filled out the Form 4473, and paid for the guns in cash. (*Id*.). Mr. Jambor was later contacted by Special Agent Cory Miles, who requested video surveillance of the firearm sale from February 29. (*Id*. at PageID 1415-1416). Mr. Jambor was only able to obtain photos. (*Id*. at PageID 1416). Mr. Jambor did not have any reason to believe Ms. Coe was being untruthful, nor did anything indicate that anything was amiss or suspicious with the sale. (*Id*. at PageID 1426).

**Cory Miles**. Special Agent Cory Miles, employed by the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) for eleven years, provided detailed testimony regarding his investigation into a potential straw purchase involving Kathryn Coe. The investigation commenced on March 1, 2024, following a report from a Valley View detective about suspicious activities at the Cleveland Armory. (*Id*. at PageID 1431). Ms. Coe had purchased firearms on February 22 and 29, 2024, from the Cleveland Armory and Parma Gun Store, respectively. (*Id*. at

PageID 1432). Agent Miles obtained video surveillance and 4473 forms from the gun stores. (*Id*. at PageID 1433). On February 29th, Ms. Coe got into the passenger side of a vehicle that Agent Miles identified as a vehicle registered to Alan Johnson. (*Id*.). Agent Miles interviewed Ms. Coe on March 12th. (*Id*. at PageID 1442). Ms. Coe admitted to purchasing the firearms for Charles or James House, whom she met online. (*Id*. at PageID 1444). Ms. Coe provided receipts and allowed him to review her phone, which contained a contact for James House, later identified as Charles House, with a phone number of 510-746-6038. (*Id*. at PageID 1448-1450). During the investigation, Agent Miles reviewed video footage from Yours Truly Restaurant, showing Ms. Coe with an individual later identified as Mr. Chew. (*Id*. at PageID 1460). Agent Miles was able to retrieve a photo of Mr. Chew from Ms. Coe's phone; after having an analyst look up the photo on social media, the photo was identified as being Chariece Chew. (*Id*. at PageID 1466). Agent Miles testified that he was able to obtain Mr. Chew's date of birth, and that he "then proceeded with a law enforcement query on him with identifiers, and [Agent Miles] was able to determine that [Mr. Chew] was on supervised release." (*Id*. at PageID 1467). This line of testimony drew an immediate objection from the defense, which was sustained, and a lengthy colloquy with the Court, which will be discussed later. (*Id*.). Agent Miles then contacted Manuel Perez, and Mr. Perez identified the photo as Chariece Chew. (August 14, 2025 Transcript of Trial

Proceedings, R. 88, PageID 1536). The phone records received by Agent Miles also demonstrated text messages and phone calls during the relevant timeframe between the 510 number and Ms. Coe's phone. (*Id*. at PageID 1538). During a photo lineup conducted in May, Ms. Coe identified the photo of Mr. Chew as the individual she purchased the firearms for. (*Id*. at PageID 1547-1548). Ms. Coe's house and the barn on her property were never searched. (*Id.* at PageID 1641). Agent Miles testified that when Mr. Chew was arrested, he did not have a firearm on him. (*Id.* at PageID 1669).

Two areas of testimony from Agent Miles represent areas of significant concern as to the integrity of the trial. First, during his testimony, Agent Miles mentioned that Mr. Chew was on federal supervised release. (*Id.* at PageID 1467). This statement led to an objection that was sustained and a motion for a mistrial by the Defense. (*Id.*; R. 88 at PageID 1488). The defense cited case law from the Sixth Circuit, *Zuern v. Tate,* 336 F.3d 478 (6th Cir. 2003), which state that the five factors to analyze in determining whether a mistrial is warranted based on an improper statement from the Government's witness: whether the remark was unsolicited, the reasonableness of the government's questioning, whether the limiting instruction was immediate, clear, and forceful, the presence of any bad faith, and whether the remark was only a small part of the evidence against the defendant. (*Id.* at PageID 1488-1489). The Defense argued that the remark was not

immediately addressed with a limiting instruction. (*Id.* at PageID 1490), in addition to the fact that Agent Miles was present for numerous colloquies, discussions and meetings in which it was explicitly clear that Mr. Chew's supervised release status was not to be mentioned. (*Id.* at PageID 1491). The jurors had also submitted numerous questions reflecting that Mr. Chew's status on supervised release was on their minds. (*Id.* at PageID 1493). The Court acknowledged the defense's concerns but ultimately denied the motion for a mistrial, finding that the remark was unsolicited and not made in bad faith, that the Government's line of questioning was reasonable, that the jurors would be instructed at the end before they deliberate, and that it constituted a small part of the evidence against the defendant. (*Id.* at PageID 1501-1508). Second, during cross-examination and due to mishearing what was said on direct examination, Defense counsel elicited from Agent Miles that none of the guns were ever seized, opening the door on re-direct for the Government to question Agent Miles about the recovery of one of the firearms in California. (*Id.* at PageID 1689-1690; 1696). During the redirect examination, Agent Miles confirmed that one of the firearms that were related to the case was recovered in Berkeley, California. (*Id.* at PageID 1701).

## SUMMARY OF ARGUMENT

The evidence was insufficient to sustain the verdicts on Counts 1, 3, 4, and 6. The felon-in-possession counts required proof that Mr. Chew knowingly

possessed the firearms Kathryn Coe purchased, yet no firearm was ever recovered from him, and no witness ever saw him holding, carrying, or handling a weapon. The only evidence placing the firearms in his hands came from Ms. Coe, a cooperating co-defendant who had pleaded guilty and secured a testimonial agreement, and who acknowledged experiencing memory lapses lasting up to a month brought on by stress. Her account was not corroborated on the point that mattered. The surveillance footage from both gun stores showed her alone inside; no camera captured any transfer of a firearm to anyone. The cell site records established the movement of a telephone subscribed to a different name, not the movement of the four pistols, and the analyst who prepared them conceded that tower data identifies a general area rather than a location and cannot be tied to any particular person holding the device. The conspiracy counts fail for the related reason that the government's proof of an agreement to make straw purchases depended on the same uncorroborated source. Even viewed in the light most favorable to the government, that proof required the jury to stack inference upon inference to reach possession.

The District Court also abused its discretion in denying the motion for a mistrial. The parties and the Court took deliberate steps throughout trial to keep Mr. Chew's supervision status from the jury, presenting his probation officer as an unidentified government employee and declining to answer juror questions on the

subject. Those questions are the critical fact. Jurors had already asked in writing whether Mr. Chew and Alan Johnson were imprisoned together and in what capacity Manuel Perez knew him, which demonstrates that the jury was actively speculating about precisely the information Agent Miles then supplied. This case is therefore unlike the decisions holding that a passing reference to supervision adds nothing to a stipulated felony conviction, because here the record shows what was on the jury's mind. Compounding the harm, no immediate instruction was given. The objection was sustained and the jurors were sent home for the night with the disclosure unaddressed. The instruction they ultimately received came two days later, buried in the general charge, and never identified the testimony it was meant to cure. The Sixth Circuit decisions upholding mistrial denials rest uniformly on instructions that were immediate, clear, and forceful. The instruction here was none of those things, and the District Court itself acknowledged at trial that this factor favored Mr. Chew before resolving the issue in its written opinion on a threshold ground that made the factor irrelevant.

Mr. Chew was also denied the effective assistance of counsel. The District Court had excluded the ATF trace report showing that one of the firearms was recovered in California and had cautioned the parties against testimony inviting the jury to construct fictional facts about recovery. Trial counsel nonetheless elicited from Agent Miles that no firearms had been seized and that the ATF possessed

none of them, opening the door to the very evidence the defense had successfully excluded. That was not a strategic choice between imperfect alternatives; counsel's stated justification, that she was following up on direct examination, proved to be a misrecollection of the testimony. The prejudice is apparent from the use the government made of the evidence. In closing, the prosecutor told the jury that a firearm was recovered in California and asked where Mr. Chew was from, converting an excluded fact into the government's affirmative argument on possession, the element its proof was weakest on.

Each of these errors independently warranted a new trial under Rule 33, and their cumulative effect plainly did. A trial in which the jury learned the defendant was under active federal supervision without any contemporaneous instruction to disregard it, and in which the single piece of excluded evidence became the centerpiece of the government's closing on the contested element, is not a trial whose result is reliable. This Court should reverse the denial of the Rule 29 motion and direct entry of judgment of acquittal. In the alternative, it should vacate the convictions and remand for a new trial.

## ARGUMENT

### I. The evidence was insufficient to sustain the verdicts on Counts 1, 3, 4, and 6, and the District Court erred in denying Mr. Chew's motion for judgment of acquittal.

#### A. Standard of Review.

A district court's refusal to grant a motion for judgment of acquittal is reviewed de novo. *United States v. Lee*, 359 F.3d 412, 418-19 (6th Cir.2004) When considering a sufficiency of the evidence challenge, the Court does not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the [judge]." *United States v. M/G Transport Servs., Inc.*, 173 F.3d 584, 588-89 (6th Cir.1999). The task is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *Id.* at 589 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

**B. The Government failed to prove that Mr. Chew possessed any firearm.**

Counts 3 and 6 charged Mr. Chew with possessing firearms after a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The offense has three elements: a qualifying prior conviction, knowing possession of the firearm specified in the indictment, and travel in or effect on interstate commerce. *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007). The parties stipulated to the first and the third. Possession was the only contested element, and it was the element the government's proof could not reach.

Possession may be actual or constructive. Actual possession requires that the defendant have immediate possession or control of the weapon. *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973). Constructive possession exists where a person does not have possession but knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. *Grubbs*, 506 F.3d at 439 (quoting *Craven*). Presence alone near a gun does not show the requisite knowledge, power, or intention to exercise control over it; other incriminating evidence, coupled with presence, is required to tip the scale in favor of sufficiency. *Id.*; *United States v. Crump*, 65 F.4th 287, 295 (6th Cir. 2023). And it is not enough that a defendant possessed a firearm at some unidentified point in the past. The evidence must prove that he possessed the firearm specified in the indictment. *Grubbs*, 506 F.3d at 439; *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003). Deferential as the sufficiency standard is, this Court's power of review is not toothless. *Grubbs*, 506 F.3d at 439. Substantial evidence means more than a scintilla; it is evidence affording a substantial basis of fact from which the fact in issue can reasonably be inferred. *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967).

*Grubbs* supplies the organizing principle for cases like this one. The strength of the inference of dominion and control varies inversely with the defendant's distance from the weapon: where a defendant is found in close proximity to a

firearm, the inference is particularly strong and less corroborating evidence is required, and it follows that the less evidence tying a defendant to a gun, the greater the circumstantial evidence must be to sustain a conviction. 506 F.3d at 440. This Court illustrated the point with a hypothetical that describes the present record with some precision. If a defendant is charged in California with constructive possession of a firearm found in Maine, the incriminating evidence that he had dominion and control over that same firearm must be comparatively stronger, and establishing constructive possession in such a case cannot be as easy as a witness testifying that she saw the defendant with an unspecified gun at some unspecified point in time. *Id.*

There was no actual possession here. The government never recovered a firearm from Mr. Chew. Agent Miles testified that he had personally seized none of them, and there were no firearms in the courtroom. He further testified that when Mr. Chew was arrested he did not have a firearm on him. No witness other than Ms. Coe ever placed a firearm in Mr. Chew's hands, and no photograph, video, or forensic evidence did so either. The surveillance footage from the Cleveland Armory and the Parma Gun Shop showed Ms. Coe inside the stores alone. Jason Bowser, who carried the boxes to her vehicle and placed them in the back seat himself, testified that he saw no one else in the car. The footage from the

Yours Truly restaurant showed two people entering a restaurant and being seated. It showed no firearm.

Nor was there constructive possession, because the premise on which constructive possession rests was absent from this record. In *Spencer*, the defendant owned the home, the rifle was recovered from his master bedroom alongside his own clothing and personal effects, all but one round of the seized ammunition was in that same room, and an informant had seen firearms there on prior visits. *United States v. Spencer*, 364 F. App'x 197, 199-200 (6th Cir. 2010). In *Crump*, the defendant was the only person inside the apartment, two firearms lay on either side of the bed, his birth certificate and mail and a photograph of him inside the residence were recovered from the nightstand drawer, and his recorded jail calls established his familiarity with the guns. 65 F.4th at 295-96. This Court has been careful to note that the quantum of evidence required to establish constructive possession is minimal only when the defendant is in close proximity to the item at issue. *Id.* at 295. Where a defendant is in nonexclusive possession of premises in which contraband is found, no inference of knowledge and control arises absent other incriminating statements or circumstances. *Spencer*, 364 F. App'x at 199 (citing *United States v. Bailey*, 553 F.3d 940, 945 n.3 (6th Cir. 2009)). Mr. Chew was not in exclusive possession of any premises, nonexclusive possession of any premises where a firearm was found, or proximity to any firearm

at any point the government was able to identify. There was no bedroom, no nightstand, no vehicle, and no recovered weapon of any kind.

The government's affirmative evidence ran in the opposite direction. Alan Johnson, at whose Akron residence the government contended Mr. Chew took the firearms inside, testified that no firearms were ever present in his home or his vehicle during Mr. Chew's stay, that he never saw Mr. Chew with a firearm, that he never discussed firearms with him, and that he had never seen the boxes the government alleged the guns were stored in. Probation Officer Ashlee Frank conducted an unannounced room-by-room walk-through of Johnson's apartment on March 14, 2024, within weeks of the purchases, and observed no firearms. Manuel Perez conducted a walk-through of Mr. Chew's Hayward, California residence on April 18, 2024, and observed no firearms and never saw Mr. Chew with one. Ms. Coe's residence, her vehicle, and the barn on her property were never searched at all. Every location connected to Mr. Chew that law enforcement actually examined was firearm-free, and the only locations never examined belonged to the government's cooperating witness.

What remained was Ms. Coe's account that Mr. Chew provided the money, directed the purchases, and took the firearms into the house. To the extent the jury rejected the testimony of Johnson, Officer Frank, and Officer Perez in order to credit her, that rejection supplied nothing. Even if the jury disbelieved all of the

witnesses, that disbelief alone cannot constitute affirmative proof of constructive possession, and the government still bears the burden of coming forward with evidence connecting the defendant to the firearm. *Grubbs*, 506 F.3d at 440. The question is not whether the jury was entitled to discredit the defense proof. It is whether the government produced substantial evidence, specifically evidence affording a substantial basis of fact from which possession could reasonably be inferred, *Martin*, 375 F.2d at 957, that Mr. Chew exercised dominion and control over the four Romarm Draco pistols identified in Counts 3 and 6. It did not.

The corroboration the government offered did not reach the possession element. Robert Little testified that telephone number 510-746-6038 was subscribed in the name of James House at a Hayward address that did not exist. He acknowledged on cross-examination that tower data establishes a general area rather than a precise location, and that the records were tied to the telephone number and not to any specific individual holding the device. The Greyhound records carried the same limitation. George Cervantes testified that the ticket in Mr. Chew's name was purchased by another person, that no identification is required to board a bus, and that he had no independent knowledge of who bought the tickets or who boarded. This evidence, taken in the light most favorable to the government, establishes that a telephone traveled between Akron, two gun stores,

and a restaurant on two days in February 2024. Travel is not dominion, and a telephone's movement is not a defendant's control over a weapon.

The government's remaining bridge was a firearm recovered in California, which the jury learned of through Agent Miles and which the prosecutor then invoked in closing. That evidence proves the opposite of what the government asked the jury to draw from it. The weapon was identified only as a Mini or Micro Draco, with no serial number tying it to any of the four pistols charged in the indictment. *Grubbs* forecloses precisely this inference. Indirect testimony has generally sufficed to support a felon-in-possession conviction only where it is contemporaneous with the recovery of the weapon, and where the only evidence connecting a defendant to a gun is that he at some point in the past and in some other place possessed some type of gun, the conviction cannot be sustained. 506 F.3d at 442. There, an interval of at least ten days between an eyewitness's observation and the search was far too much. *Id.* Here the interval was unspecified, and the description of the weapon was, if anything, more generic than the dark-colored automatic this Court held too common to support a verdict. *Id.* at 440. A firearm of an unspecified serial number recovered in another state is not proof that Mr. Chew possessed the firearms specified in the indictment. *Schreane*, 331 F.3d at 560.

*Grubbs* reversed a conviction on a record materially stronger than this one. There, the government had recovered the charged handgun, an eyewitness testified that he had seen the defendant holding a gun that looked like it, and the defendant had stayed overnight in the house where it was found. 506 F.3d at 437-38. This Court held that no rational trier of fact could find constructive possession. *Id.* at 440. Here the government recovered nothing, tied nothing to Mr. Chew forensically, and placed him at no location where a firearm was ever shown to exist. The convictions on Counts 3 and 6 cannot stand, and this Court should reverse and remand for entry of a judgment of acquittal.

## II. The District Court abused its discretion in denying Mr. Chew's motion for a mistrial after the case agent told the jury that Mr. Chew was on federal supervised release.

### A. Standard of Review

A district court's denial of a motion mistrial is reviewed for abuse of discretion. *United States v. Robinson*, 99 F.4th 344, 360 (6th Cir. 2024). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an[ ] erroneous legal standard." *United States v. Oakland Physicians Med. Ctr.*, LLC, 44 F.4th 565 (6th Cir. 2022), quoting *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995). In assessing whether improper testimony warrants a mistrial, this Court weighs whether the remark was unsolicited, whether the government's line of questioning

was reasonable, whether a limiting instruction was immediate, clear, and forceful, whether the government evidenced bad faith, and whether the remark was only a small part of the evidence against the defendant. *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (citing *United States v. Forrest*, 17 F.3d 916, 920 (6th Cir. 1994)). Throughout, the Court's primary concern is fairness to the defendant. *Forrest*, 17 F.3d at 919.

**B. The parties and the District Court built an elaborate structure to keep Mr. Chew's criminal history from the jury, and the case agent dismantled it in a single answer. No immediate curative instruction followed, and the general charge delivered two days later did not substitute for one.**

Because a prior felony conviction is an element of § 922(g)(1), Mr. Chew stipulated to that element before trial for the express purpose of keeping the details of his record away from the jury. The District Court and both parties then spent three days maintaining that protection under difficult conditions. Two of the government's witnesses were officers of the very supervision system the stipulation was designed to conceal. Ashlee Frank was permitted to describe Alan Johnson's supervision without disclosing that Mr. Chew had been in custody with him.. Manuel Perez, Mr. Chew's own federal probation officer, was introduced to the jury only as a man employed with the government who knew Mr. Chew for reasons left unstated. On the third day of trial, Special Agent Cory Miles testified that a law enforcement query revealed that Mr. Chew was on supervised release.

The defense objected immediately and the Court sustained the objection. In that single answer the jury learned what three days of careful examination had been designed to withhold: that Mr. Chew had a federal criminal conviction, that it was serious enough to carry a term of supervision, and that he remained under the supervision of the United States at the time of the conduct charged. It also supplied the jury with the explanation for Mr. Perez that the Court had refused to give it. Nor was this the jury's only exposure. Exhibit 53 went to the jury bearing unredacted language reflecting verification by a probation officer. The characterization of this record as an isolated slip does not survive the presence of a second, documentary exposure to the same fact.

Mr. Chew does not dispute that three of the *Zuern* factors favor the government. The remark was unsolicited, the government's question was not itself improper, and there is no evidence of bad faith. The District Court so found, and this brief does not ask this Court to disturb those findings. The claim rests on the two factors that remain. The jury heard the disclosure, the objection was sustained, and nothing was said to the jury about it. The jurors were then excused for the evening and sent home overnight carrying the disclosure with them, uninstructed. The mistrial motion was argued and denied the following morning. The instruction the jury ultimately received arrived at the close of a five-day trial, embedded within the general charge, and it never mentioned Agent Miles, his testimony, or

the subject of supervision. An instruction is not immediate when it follows the remark by two days; it is not clear when it does not identify what the jury is being told to disregard; and it is not forceful when it is one paragraph among many in a routine closing charge.

The significance of that omission is best measured against the cases in which this Court has affirmed the denial of a mistrial, because in each of them the curative instruction did the work. In *United States v. Massengill*, 769 F. App'x 342 (6th Cir. 2019), a detective disclosed the defendant's parole status in violation of a pretrial understanding. This Court affirmed, emphasizing that the testimony was nonresponsive to a reasonable line of questioning, that the district court gave a curative instruction immediately after the second nonresponsive answer, and that the evidence against the defendant was otherwise extensive. *Id.* at 342, 347. In *Fonville*, this Court affirmed because the district court's curative instruction was thorough and clearly directed the jury to disregard the comments, and because the parties had agreed to its content. 652 F. App'x 383, 388 (6th Cir. 2016). In *United States v. Stapleton*, 297 F. App'x 413 (6th Cir. 2008), this Court affirmed where the district court promptly administered a cautionary instruction that identified the offending comment and told the jury in terms to disregard it. *Id.* at 422. The decisions *Stapleton* collects follow the same pattern: a mistrial was properly denied in *United States v. Moore*, 376 F.3d 570, 575 (6th Cir. 2004), where the court

immediately admonished the jury, and in *United States v. Hernandez*, 873 F.2d 925, 928 (6th Cir. 1989), where the limiting instruction was immediate, clear, and forceful. *Stapleton*, 297 F. App'x at 422.

The presumption on which those cases rest is that juries understand and follow the directions the court gives them. *Forrest*, 17 F.3d at 920-21. The presumption has no application here, because this jury was given no direction to follow. The government cannot invoke the curative-instruction cases while pointing to no curative instruction. The government's answer below was that trial counsel requested the overnight recess and that no lawyer proposed an instruction before the jurors went home. That answer cannot be squared with the governing test. *Zuern* asks whether a limiting instruction was immediate, clear, and forceful. 336 F.3d at 485. In *Fonville* and *Massengill* alike, the instruction issued from the bench, and in *Massengill* it issued at a sidebar prompted by the objection itself. 769 F. App'x at 344. The duty to cure sits with the court, and counsel sought the recess in order to brief the remedy she was seeking, which was a mistrial. A defendant who moves for a mistrial does not waive the lesser remedy by seeking the greater one. The distinction also matters to preservation: in *Massengill*, the district court weighed the defense's failure to contemporaneously object, *id.* at 344, and in *Fonville* the absence of any objection reduced review to plain error, 652 F. App'x

at 388. Here, counsel objected the moment the words were spoken and the Court sustained the objection.

The fifth *Zuern* factor asks whether the remark was only a small part of the evidence against the defendant. That inquiry did the decisive work in each of the affirmances. *Massengill* turned on evidence this Court described as extensive: more than a kilogram each of methamphetamine and marijuana, distribution paraphernalia, a loaded firearm, and the defendant's own recorded admissions. 769 F. App'x at 347. *Fonville* turned on a still narrower point — the defendant's silence bore on nothing the government had to prove, because it concerned only his refusal to incriminate others, and competent evidence independently established possession. 652 F. App'x at 388. *Stapleton* turned on a stray remark about a codefendant's failure to plead guilty, which bore on no element at all. 297 F. App'x at 422. Here, however, the government's proof of possession was not extensive. As set out in Issue I, no firearm was recovered, no witness other than a cooperating co-defendant placed a weapon in Mr. Chew's hands, and the corroboration established only the movement of a telephone. And the disclosure did not concern a collateral matter. Evidence that Mr. Chew was a convicted felon under active federal supervision bore directly on a propensity inference and it bore on the contested element by making the cooperating witness's account of an armed felon more believable than the record otherwise permitted.

This record supplies something the affirmances did not, because these jurors told the Court in writing what they were thinking about. Before Agent Miles testified, jurors submitted written questions asking whether Mr. Chew and Mr. Johnson had been imprisoned together, and asking in what capacity Mr. Perez worked with Mr. Chew. The Court and counsel agreed those questions could not be put to the witnesses. The jury had identified the gap, asked to have it filled, and been refused. Agent Miles then filled it. No reviewing court in *Massengill*, *Fonville*, or *Stapleton* confronted affirmative record evidence that the jury was already speculating about precisely the subject the improper testimony disclosed.

Two of the five *Zuern* factors weighed against the government, one of them by the District Court's own finding, and both bore on whether this jury could return a verdict on the evidence rather than on Mr. Chew's status. Because the primary concern is fairness to the defendant, *Forrest*, 17 F.3d at 919, and because the instruction that has carried every comparable affirmance was absent here, the denial of the mistrial was an abuse of discretion. This Court should vacate the convictions and remand for a new trial.

## III. Mr. Chew was denied the effective assistance of counsel when trial counsel elicited testimony that no firearms had been recovered, opening the door to evidence the District Court had excluded before trial.

### A. This Court should reach the claim, because the record is adequately developed.

The general rule in this Circuit is that ineffective-assistance claims are best left to collateral review under 28 U.S.C. § 2255, after the parties have had an opportunity to develop an adequate record. *United States v. Williams*, 612 F.3d 500, 508-09 (6th Cir. 2010); see *United States v. Fonville*, 652 F. App'x 383, 388 n.2 (6th Cir. 2016) (declining to reach the claim where the appellant offered nothing beyond the assertion that prejudice was patent); see also *Massaro v. United States*, 538 U.S. 500, 504-05 (2003). The rule exists because the reviewing court ordinarily has no way to know why counsel did what she did, and no record on which to measure the consequences. Neither condition is present here. Mr. Chew raised this claim in the District Court under Rule 33, the government responded, and the District Court resolved it on the merits. The conduct at issue occupies a discrete and fully transcribed exchange. The District Court's pretrial ruling excluding the evidence, and its express warning about the subject, are likewise in the record. What counsel asked, why it was asked, what the Court had forbidden, what came in as a result, and what the government did with it are all on the face of the transcript. Nothing further would be added by an evidentiary hearing, and this Court is in as good a position to evaluate the claim now as a district court would be later. The claim is properly before the Court. Claims of ineffective assistance are reviewed de novo. *United States v. Gardner*, 417 F.3d 541 (6th Cir. 2005)

### B. Counsel's performance fell below an objective standard of reasonableness and prejudiced the defense.

To establish ineffective assistance, a defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Review of counsel's performance is highly deferential, and a reviewing court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.* at 689. However, "[o]pening the door to damaging testimony can constitute deficient performance." *Jones v. Harry*, 405 F. App'x 23, 27 (6th Cir. 2010), citing *White v. Thaler*, 610 F.3d 890, 900 (5th Cir. 2010). Decisions declining to find deficient performance in door-opening cases share a feature this record lacks. In each, counsel faced a genuine strategic dilemma and chose the least damaging path available. *See Jones*, 405 F. App'x at 27 (counsel not unreasonable in addressing on cross-examination a police statement the prosecution had used to refresh the witness's recollection, despite the trial court's warning that the questioning risked opening the door to excluded testimony, where the nature of the direct examination left counsel limited strategic options); *Davenport v. Rapelje*, No. 10-13567, 2013 WL 2318841, at *7 (E.D. Mich. May 28, 2013) (counsel not deficient in introducing character evidence knowing it would open the door to rebuttal proof of violent behavior, where the prosecution had already portrayed the defendant as a violent and unstable alcoholic and counsel therefore had nothing to lose).

The premise of both those decisions is that counsel obtained something she could not otherwise have had. In *Jones*, the police statement had already been placed before the jury by implication, and only cross-examination could dispel the credibility it lent the witness. 405 F. App'x at 27. In *Davenport*, the defendant's character was already in ruins, and the rebuttal evidence could add little. 2013 WL 2318841, at *7. Where door-opening reflects a misapprehension rather than a choice, courts have found deficient performance. In *Diggle v. Sheldon*, No. 3:13-CV-00442, 2014 WL 11206626, at *15-16 (N.D. Ohio May 21, 2014), *report and recommendation adopted*, 2016 WL 1223217 (N.D. Ohio Mar. 29, 2016), trial counsel misunderstood the scope of an in limine ruling and inadvertently opened the door to damaging evidence. The Ohio Court of Appeals held that this was deficient performance, *State v. Diggle*, 2012-Ohio-1583 (3d Dist.), and the district court found nothing unreasonable in that determination. 2014 WL 11206626, at *16. Relief was nonetheless denied on prejudice, because other witnesses had testified to the same facts and the evidence that came through the door was therefore cumulative. *Id.*

The presumption of reasonable professional assistance does not survive this record. Before trial, Mr. Chew moved in limine to exclude a late-disclosed ATF trace report reflecting that one of the four charged firearms had been recovered in California. The District Court granted the motion. In doing so it did not merely

exclude the document; it cautioned the parties against testimony that would invite the jury to construct fictional facts about the recovery of the weapons. The Court thus identified, in advance and in terms, the precise line that could not be crossed and the precise consequence of crossing it.

Two days later, trial counsel walked the case agent through a series of questions establishing that no firearms had been seized and that the ATF possessed none of them. The District Court ruled that the door had been opened, and the government was permitted to elicit that a firearm had in fact been recovered in California. The prosecutor then argued that recovery to the jury in closing. The government characterized this below as strategy, and the point deserves a direct answer rather than a dismissal. Establishing that no firearm was recovered was indeed central to the defense, and counsel was right to want that fact before the jury. But the fact was already before the jury, and it had arrived without cost. The government's own case established that no weapon had been produced or introduced; there were no firearms in evidence and none in the courtroom. Counsel could have argued the government's failure of proof in closing from the state of the record as the government left it. What she could not do, without forfeiting the very advantage she was pursuing, was affirmatively examine the case agent on whether the ATF possessed the guns, a question that had no answer the defense wanted and one answer the defense could not survive.

The distinction is not hindsight. It is the distinction the District Court had drawn aloud, in counsel's presence, two days earlier. Counsel obtained an exclusion order, received an explicit warning identifying the conduct that would dissolve it, and then engaged in that conduct to secure a fact she already had. Strategy that trades a fact already in evidence for the admission of the single most damaging piece of evidence the Court had kept out is not strategy. It is the abandonment of a ruling counsel had just won. Nor could the District Court have spared Mr. Chew the consequence. This Court has held that a district court does not abuse its discretion in ruling that the defense opened the door to evidence otherwise properly excluded, and that evidence responsive to the opening passes through it. *Fonville*, 652 F. App'x at 389. Once the questions were asked, the exclusion order was gone.

Prejudice requires a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different — a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. The evidence counsel let in was not marginal. As set out in Issue I, the government's proof that Mr. Chew possessed the charged firearms consisted of the account of a cooperating co-defendant, uncorroborated by any recovered weapon, any forensic evidence, or any other witness, and supported only by records

establishing the movement of a telephone. The absence of a recovered firearm was not one argument among several. It was the defense.

The recovery evidence did more than blunt that argument. It supplied the jury with the one thing the government otherwise lacked: a physical object connecting the charged conduct to a real firearm somewhere in the world. That it was recovered in another state and was never tied by serial number to any of the four weapons in the indictment, made it worthless as proof of possession, but it did not make it harmless. It gave the jury a concrete fact to anchor an otherwise abstract case, and the prosecutor used it for exactly that purpose in closing. The prejudice inquiry here also cannot be conducted in isolation from what else this jury had been told. The same jury had learned, days earlier and without any contemporaneous instruction, that Mr. Chew was a convicted felon serving a term of federal supervision. A jury that has been told the defendant is under federal supervision, and is then told that one of the guns turned up in California, has been given a narrative the evidence could not otherwise support. Confidence in this verdict cannot survive both.

Because counsel's performance was deficient and the deficiency prejudiced the defense, Mr. Chew was denied his Sixth Amendment right to the effective assistance of counsel. This Court should vacate the convictions and remand for a new trial.

## IV. The District Court erred in denying Mr. Chew's motion for a new trial, where the cumulative effect of the errors at trial rendered the proceeding fundamentally unfair.

### A. Standard of Review.

This Court reviews the denial of a motion for a new trial for abuse of discretion, and will not reverse absent a clear abuse of that discretion. *United States v. Howard*, 621 F.3d 433, 458 (6th Cir. 2010); *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995). Rule 33 permits the court to vacate a judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). The defendant bears the burden of demonstrating that a new trial is warranted. *Pierce*, 62 F.3d at 823.

### B. The errors, taken together, rendered the trial fundamentally unfair.

A defendant may show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair. *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004); *see United States v. Hines*, 398 F.3d 713, 719 (6th Cir. 2005). The analysis permits the Court to consider only actual errors, not non-errors. *United States v. Wheaton*, 517 F.3d 350, 372 (6th Cir. 2008); *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004).

There are actual errors here, and they share a common character. Each one delivered to the jury a category of information that the District Court had ruled the jury could not have, and in each instance the safeguard that was supposed to

prevent that delivery failed. The first was the supervised-release disclosure. The parties stipulated to the prior-conviction element for the express purpose of keeping Mr. Chew's record from the jury, and the Court policed that stipulation through the testimony of two supervision officers. Agent Miles then told the jury that Mr. Chew was on supervised release, the objection was sustained, and the jury went home for the night with no instruction to disregard what it had heard. The second was the firearm-recovery evidence. The Court excluded the ATF trace report before trial and warned the parties against testimony that would invite the jury to construct fictional facts about the recovery of the weapons. Trial counsel's examination of Agent Miles opened the door, and the jury learned that a firearm had been recovered in California. The third was the government's use of that evidence. Having obtained admission of the California recovery through a door the defense opened, the prosecutor placed it before the jury in closing argument as affirmative proof connecting Mr. Chew to the charged weapons, notwithstanding that no serial number tied the recovered weapon to any of the four firearms in the indictment.

The convergence is what matters. This jury had already told the Court in writing that it was speculating about Mr. Chew's custodial history and about the unexplained relationship between Mr. Chew and a government employee. It was then told, uninstructed, that he was under federal supervision. It was then told that

one of the guns had turned up in California. And it was then told by the prosecutor, in closing, what to make of that. By the time the case reached deliberation, a jury that the Court had worked for three days to insulate from Mr. Chew's status had been given both his status and a physical object to attach to a case that otherwise rested on the word of a cooperating co-defendant. The interest of justice is not served by a verdict returned on that record, and this Court should vacate the convictions and remand for a new trial.

## CONCLUSION

The government failed to prove that Mr. Chew possessed any firearm or joined any conspiracy, and the trial that produced these verdicts was one in which the jury learned, without correction, that Mr. Chew was a convicted felon under federal supervision and that one of the charged weapons had been recovered in another state, both facts the District Court had ruled the jury could not have. For the foregoing reasons, Mr. Chew respectfully requests that this Court reverse the denial of his motion for judgment of acquittal and remand with instructions to enter a judgment of acquittal on Counts 1, 3, 4, and 6. In the alternative, Mr. Chew requests that this Court vacate his convictions and remand for a new trial on the grounds that the District Court abused its discretion in denying his motion for a mistrial, that he was denied the effective assistance of trial counsel, and that the cumulative effect of these errors deprived him of a fundamentally fair proceeding.

Respectfully submitted,

/s/ Marcus S. Sidoti
MARCUS S. SIDOTI, 0077476
FG+G LLC
50 Public Square
Cleveland, Ohio 44113
(216) 241-1430
Attorney for Defendant-Appellant
marcus@fggfirm.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 11,121 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

/s/ Marcus Sidoti
MARCUS SIDOTI
Attorney

Date: August 17, 2026

## CERTIFICATE OF SERVICE

On August 17, 2026, I filed this brief with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Marcus Sidoti
MARCUS SIDOTI
Attorney

# ADDENDUM

## ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Document | Record Entry Number | Page ID # |
|---|---|---|
| Superseding Indictment | R. 27 | 187 |
| Defense Motion in Limine | R. 68 | 519 |
| Transcript of Trial Proceedings, August 11, 2025 | R. 85 | 712 |
| Transcript of Trial Proceedings, August 12, 2025 | R. 86 | 958 |
| Transcript of Trial Proceedings, August 13, 2025 | R. 87 | 1231 |
| Transcript of Trial Proceedings, August 14, 2025 | R. 88 | 1467 |
| Transcript of Trial Proceedings, August 15, 2025 | R. 90 | 1796 |
| Motion to Withdraw as Counsel | R. 91 | 1929 |
| Motion for New Trial | R. 99 | 2039 |
| Response in Opposition to Motion for New Trial | R. 101 | 2065 |
| Order Denying Motion for New Trial | R. 102 | 2092 |
| Criminal Judgment | R. 111 | 2182 |
| Notice of Appeal | R. 114 | 2196 |