IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

CASE NO. 26-3548

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

CHARIECE CHEW,
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Northern District of Ohio
Eastern Division

---

# BRIEF OF PLAINTIFF-APPELLEE

---

DAVID M. TOEPFER
United States Attorney

Laura McMullen Ford
Assistant United States Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Telephone No: (216) 622-3817
Facsimile No: (216) 522-7358
Laura.Ford@usdoj.gov

Counsel for Plaintiff-Appellee

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................ ii

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF THE ISSUES.................................................................2

STATEMENT OF THE CASE....................................................................3

SUMMARY OF THE ARGUMENT ........................................................16

ARGUMENT ...........................................................................................19

I. THE EVIDENCE SUFFICIENTLY SHOWED THAT CHEW POSSESSED FIREARMS AS A FELON. ........................................19

II. THE DISTRICT COURT PROPERLY DENIED A MISTRIAL BASED ON A CASE AGENT MENTIONING THAT CHEW, WHO ALREADY STIPULATED TO HAVING A PRIOR CONVICTION PUNISHABLE BY MORE THAN ONE-YEAR, WAS ON SUPERVISED RELEASE. ..............................................31

III. CHEW CANNOT SHOW THAT DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE AT TRIAL. ......................40

IV. THE COMBINED EFFECT OF ALLEGED ERRORS DID NOT RENDER CHEW'S TRIAL FUNDAMENTALLY UNFAIR...........46

CONCLUSION ........................................................................................48

CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION.................49

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............50

## TABLE OF AUTHORITIES

### Federal Cases


Jackson v. Virginia, 443 U.S. 307 (1979)....................20

Jones v. Harry, 405 F. App'x 23 (6th Cir. 2010)....................45

Massaro v. United States, 538 U.S. 500 (2003).................... 40, 41

Payne v. Warden, Lebanon Corr. Inst., 543 F. App'x 485 (6th Cir. 2013)............46

Rehaif v. United States, 588 U.S. 225 (2019)....................21

Scarborough v. United States, 431 U.S. 563 (1977)....................22

Strickland v. Washington, 466 U.S. 668 (1984)....................42

United States v. Adams, 722 F.3d 788 (6th Cir. 2013) ....................47

United States v. Alsop, 12 F. App'x 253 (6th Cir. 2001).................... 32, 34, 37

United States v. Billman, 257 F. App'x 904 (6th Cir. 2007)....................46

United States v. Blackwell, 459 F.3d 739 (6th Cir. 2006)....................20

United States v. Burns, 298 F.3d 523 (6th Cir. 2002) ....................28

United States v. Caver, 470 F.3d 220 (6th Cir. 2006) ....................31

United States v. Charles, Nos. 22-5424/5427, 2024 WL 4554806
(6th Cir. 2024)....................32

United States v. Craven, 478 F.2d 1329 (6th Cir. 1973) .................... 22, 29

United States v. Daniel, 329 F.3d 480 (6th Cir. 2003) ....................20

United States v. Davis, 306 F.3d 398 (6th Cir. 2002) ....................29

United States v. Davis, 577 F.3d 660 (6th Cir. 2009) ....................21

United States v. Ferguson, 669 F.3d 756 (6th Cir. 2012).................... 40, 41

United States v. Forrest, 17 F.3d 916 (6th Cir. 1994) .................... 32, 35

United States v. Fortson, 194 F.3d 730 (6th Cir. 1999) .......... 42

United States v. Graham, 622 F.3d 445 (6th Cir. 2010) .......... passim

United States v. Griffin, 476 F. App'x 592 (6th Cir. 2011) .......... 33

United States v. Grubbs, 506 F.3d 434 (6th Cir. 2007) .......... 30, 31

United States v. Hearn, 500 F.3d 479 (6th Cir. 2007) .......... 29

United States v. Henderson, 626 F.3d 326 (6th Cir. 2010) .......... 29

United States v. Hernandez, 227 F.3d 686 (6th Cir. 2000) .......... 46

United States v. Hines, 943 F.2d 348 (4th Cir. 1991) .......... 35

United States v. Howard, 621 F.3d 433 (6th Cir. 2010) .......... 31

United States v. Humphrey, 279 F.3d 372 (6th Cir. 2002) .......... 20, 30

United States v. Hunt, 521 F.3d 636 (6th Cir. 2008) .......... 31

United States v. Kincaide, 145 F.3d 771 (6th Cir. 1998) .......... 22

United States v. King, 272 F.3d 366 (6th Cir. 2001) .......... 28

United States v. Maliszewski, 161 F.3d 992 (6th Cir. 1998) .......... 20

United States v. Malone, 308 F. App'x 949 (6th Cir. 2009) .......... 21

United States v. Margarita Garcia, 906 F.3d 1255 (11th Cir. 2018) .......... 47

United States v. Martin, Nos. 21-4019/4081, 2022 WL 17078715 (6th Cir. Nov. 18, 2022) .......... 29

United States v. Moore, 376 F.3d 570 (6th Cir. 2004) .......... 23

United States v. Owens, 426 F.3d 800 (6th Cir. 2005) .......... 28

United States v. Parker, 997 F.2d 219 (6th Cir. 1993) .......... 48

United States v. Pena-Santo, 809 F.3d 686 (1st Cir. 2015) .......... 47

United States v. Penson, 141 F. App'x 406 (6th Cir. 2005) .......... 34, 37

United States v. Peters, 15 F.3d 540 (6th Cir. 1994) ..... 19
United States v. Powell, 652 F.3d 702 (7th Cir. 2011) ..... 47
United States v. Reed, 163 F.4th 338 (6th Cir. 2025) ..... 23
United States v. Robinson, 390 F.3d 853 (6th Cir. 2004) ..... 23
United States v. Robinson, 813 F.3d 251 (6th Cir. 2016) ..... 19
United States v. Sherlin, 67 F.3d 1208 (6th Cir. 1995) ..... 20, 28
United States v. Siefert, 161 F.4th 379 (6th Cir. 2025) ..... 30
United States v. Smith, 601 F.3d 530 (6th Cir. 2010) ..... 32
United States v. Stewart, 628 F.3d 246 (6th Cir. 2010) ..... 28
United States v. Underwood, 859 F.3d 386 (6th Cir. 2017) ..... 47
United States v. Veteto, 701 F.2d 136 (11th Cir. 1983) ..... 32
United States v. Walker, 734 F.3d 451 (6th Cir. 2013) ..... 21
United States v. Warman, 578 F.3d 320 (6th Cir. 2009) ..... 47
United States v. Wellman, 26 F.4th 339 (6th Cir. 2022) ..... 47
United States v. Wiseman, 932 F.3d 411 (6th Cir. 2019) ..... 33, 36, 37
Weinberger v. United States, 268 F.3d 346 (6th Cir. 2001) ..... 42
Zafiro v. United States, 506 U.S. 534 (1993) ..... 38
Zuern v. Tate, 336 F.3d 478 (6th Cir. 2003) ..... 12, 32, 35

**Federal Statutes**

18 U.S.C. § 922(a)(6) ..... 4
18 U.S.C. § 922(d) ..... 21
18 U.S.C. § 922(d)(1) ..... 21
18 U.S.C. § 922(g) ..... 21

18 U.S.C. § 922(g)(1) ........ passim

18 U.S.C. § 932(b)(1) ........ 4, 21, 22

18 U.S.C. § 3231 ........ 1

28 U.S.C. § 1291 ........ 1

28 U.S.C. § 2255 ........ 40

**Federal Rules**

Fed. R. App. P. 28(a)(8)(A) ........ 22, 38

Fed. R. App. P. 34(a)(2)(C) ........ vi

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee, the United States of America, disagrees with Defendant-Appellant Chariece Chew that oral argument is necessary, (Doc. 8: Chew's Br., Page 2), because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the decisional basis. The trial evidence sufficiently showed that Chew twice convinced a co-conspirator to purchase firearms on his behalf because he was prohibited from doing so himself as a convicted felon, and that Chew subsequently possessed the straw-purchased firearms. Because there was no reversible trial error and defense counsel's trial performance was not constitutionally ineffective, the government recommends that this Court decide this case on the briefs under Federal Rule of Appellate Procedure 34(a)(2)(C).

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231 over this case charging federal criminal offenses. (R. 27: Superseding Indictment, PageID 187-91). The district court entered final judgment against Defendant-Appellant, Chariece Chew on June 9, 2026. (R. 111: Judgment, PageID 2182). Chew timely appealed on June 18, 2026. (R. 114: Notice of Appeal, PageID 2196).

This Court has jurisdiction over Chew's appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I. To prove Chew possessed a firearm as a felon, the government had to show that he had a prior conviction punishable by more than one-year imprisonment, and that he possessed firearms after sustaining that conviction. A witness testified that Chew asked her to purchase firearms for him, because his prior conviction precluded him from doing so. She agreed, purchased firearms, and gave them to Chew. Was there sufficient evidence for the jury to find Chew possessed those firearms?

II. A mistrial based on improper testimony is unwarranted unless it was clearly improper and prejudicial. The investigating agent testified that he learned Chew was on supervised release when explaining how he identified where Chew lived. But Chew stipulated to his prior conviction, the remark was a small part of the overwhelming evidence against him, and it did not reveal the conviction's nature. Did the district court abuse its discretion by denying a mistrial?

III. To establish ineffective assistance of counsel, a defendant must show counsel's performance was deficient and resulting prejudice. Chew's counsel zealously represented his interests throughout trial. And counsel's cross-examination questions that opened the door to previously excluded firearm trace information resulted in background evidence with little bearing on the charged offenses. Was counsel's performance constitutionally ineffective where it was not deficient and the trial's outcome would have been no different but-for the trace-report evidence?

IV. To warrant retrial based on cumulative error, the combined effect of individually harmless errors must have been so prejudicial that the defendant's trial was fundamentally unfair. The firearm trace evidence that defense counsel's cross-examination prompted did not concern the charged offenses' elements. And Chew's stipulated prior felony conviction was far more prejudicial than the case agent revealing Chew's supervision status. Is Chew entitled to retrial where that testimony, even when combined, was harmless?

## STATEMENT OF THE CASE

### A. Introduction.

Chew has a prior federal felony conviction punishable by more than one year, and thus is prohibited from possessing or purchasing firearms. But he traveled from California to Ohio, where he convinced an acquaintance to purchase four AK-style rifles for his purported startup "security company." Because the evidence was sufficient for the jury to convict Chew of participating in straw firearms purchase conspiracies and possessing firearms as a felon, Chew received effective assistance of counsel at trial, and the trial court properly declined to grant a mistrial, this Court should affirm.

### B. Chew travels to Ohio and conspires to straw purchase several rifles.

On March 1, 2024, a Valley View police detective contacted ATF Special Agent Cory Miles about a patrol officer potentially seeing a woman conduct a straw firearms purchase at the Cleveland Armory. (R. 87: Miles, Trans., PageID 1431). That led to Miles discovering that Kathryn Coe purchased two firearms from the Cleveland Armory on February 22nd, and two more firearms from the Parma Gun Store on February 29th. (Id., PageID 1432). He also learned that a truck associated with Coe's gun-store visits on the 29th belonged to someone on federal supervised release. (Id., PageID 1433-35, 1439).

When Miles interviewed Coe about that on March 12, 2024, she admitted making the purchases for "Charles House," who Miles ultimately identified as Defendant Chew. (Id., PageID 1443-44, 1448, 1464-67). Cellular telephone records also showed that: (1) Chew used his phone to communicate with Coe; (2) Chew's phone accessed towers that were consistent with the firearms purchase times and locations; and (3) the phone's data-use matched Greyhound travel for a passenger named Chew from California to Akron, Ohio before the purchases, and his return afterward. (R. 87: Cervantez, Trans., PageID 1236-54; R. 87: Little, Trans., PageID 1348-84). That led to the instant case against Chew and Coe.

**C. Chew is charged with firearms offenses.**

On June 26, 2024, a Northern District of Ohio grand jury returned an indictment charging Chew with two counts of conspiring to straw purchase firearms, violating 18 U.S.C. § 932(b)(1), and two counts of possessing firearms as a felon, violating 18 U.S.C. § 922(g)(1). (R. 3: Indictment, PageID 11-13). On January 7, 2025, the grand jury returned a superseding indictment adding Coe as a conspirator with Chew to straw purchase the firearms on two occasions, violating Section 932(b)(1) (Counts 1 and 4). (R. 27: Superseding Indictment, PageID 187, 189). The superseding indictment added two more counts against Chew and Coe for aiding and abetting making false statements in acquiring a firearm, violating 18 U.S.C. § 922(a)(6) (Counts 2 and 5). (Id., PageID 188-90). Chew also

remained individually charged with possessing the firearms as a firearm, violating Section 922(g)(1) (Counts 3 and 6). (Id.).

**D. Chew stipulates to his prior conviction and moves to preclude firearm trace evidence.**

Chew submitted a pretrial stipulation that before the charged offenses in the superseding indictment, he was convicted of a crime punishable under California laws by more than one-year imprisonment. (R. 67: Stipulation, PageID 517).

On August 8, 2025, Chew filed a motion in limine to preclude the government from presenting recent ATF firearms trace information showing that one of the purchased firearms was recovered in California in March 2025. (R. 68: Motion, PageID 519-23). The government acknowledged that Agent Miles' initial trace returned negative results, but a subsequent record search returned a recovery result on August 4, 2025, which the prosecution disclosed to the defense the next day. (R. 85: Trans., PageID 712-13, 718-19). Given the chronology, the court excluded the "largely speculative" evidence because, although it neither benefitted nor disadvantaged either side, its disclosure was untimely. (Id., PageID 722-23).

The government reserved the right to introduce the evidence if defense counsel opened the door to it, however. (Id., PageID 723-25). When trial began, defense counsel argued in opening statement that "they didn't recover the guns, and the Government didn't do any due diligence in that regard." (Id., PageID 936).

### E. The trial evidence shows that Chew possessed the firearms that Coe straw-purchased for him.

Greyhound bus records showed that a passenger named Chew began traveling from Hayward, California, on February 15, 2024, and arrived in Akron, Ohio, on February 18, 2024. (R. 87: Cervantes, Trans., PageID 1232-46). Alan Johnson, who Chew knew from California, confirmed that Chew arrived by Greyhound bus and stayed with him for two weeks within the same timeframe. (R. 86: Johnson, Trans., PageID 959-62, 975).

Coe, a cooperating government witness, described meeting Chew, who she originally knew as "Charles," through an online dating application in February 2024. (R. 86: Coe, Trans., PageID 997-98, 1002-03, 1072). They then met in-person at Johnson's "brother's" residence in Akron, where Chew was staying. (Id., PageID 998-99). During their first meeting, Chew asked Coe to buy firearms for his start-up security company, explaining that he could not buy them himself because he had served jailtime. (Id., PageID 1003-04, 1106-07, 1061-62, 1067, 1214).

Coe and Chew went to the Cleveland Armory in Valley View, Ohio, on February 22, 2024, as agreed, Chew told her to buy two Draco Mini firearms, provided cash for their purchase, and waited in the car during the transaction. (Id., PageID 1005-20, 1026, 1150). But the amount was insufficient, so Coe exited the store and obtained more cash from Chew that she used to buy two Micro Draco

pistols. (Id., PageID 1007-09, 1016-18). Coe texted Chew questions needed to complete the transactions, including whether to buy a used firearm. (Id., PageID 1009, 1137-38, 1214-15). Coe certified on ATF Form 4473 that she was the actual firearms buyer of the firearms, which she testified was untrue. (Id., PageID 1017-20).

After the purchases, a store employee, Jason Bowser carried the packaged guns to Coe's car and placed them on her backseat. (Id., PageID 1009, 1025-26, 1147-49; R. 87: Bowser, Trans., PageID 1299). Bowser did not recall seeing anyone in the car, but said it as "pretty trashy" inside with "Garbage, clothing, stuff all over the place," raising the possibility that someone was in the front seat. (R. 87: Bowser, PageID 1301, 1318-19, 1324).

Coe drove Chew back to the Akron residence where he was staying afterward and received $40 for the purchase. (R. 66: Coe, Trans., PageID 1027, 1067). She did not see the guns again after Chew took them in the residence and she returned home. (Id., PageID 1027-28).

Chew and Coe visited the Cleveland Armory again on February 29, 2026, for Coe to purchase two more firearms for Chew. (Id., PageID 1028-29, 1191). But the store could not conduct the sale because the FBI's background check system was "down." (Id., PageID 1029-33).

So Coe returned to the Tahoe that Chew was driving, and they went to lunch at a nearby restaurant, "Yours Truly." (Id., PageID 1033-39). Coe and Chew then went to the Parma Gun Shop, where Coe purchased two Draco Minis with cash that Chew provided. (Id., PageID 1040-46). Before the purchase, Coe completed another ATF 4473 Form falsely stating that she was the buyer. (Id., PageID 1043-45). After the purchase, (R. 87: Jambor, Trans., PageID 1414-15, 1422-23), Chew drove Coe home, gave her $40, and took the guns. (R. 86: Coe, Trans., PageID 1048). He began his return trip home on March 7, 2024, and arrived in Modesto, California, on March 16, 2024. (R. 87: Cervantes, Trans., PageID 1250-53).

Meanwhile, Miles learned about Coe's firearm purchases and obtained store surveillance images from: (1) the February 22nd Cleveland Armory transaction; (2) when a truck associated with Coe's February 29th Cleveland Armory visit exited the parking lot; and (3) after the Parma Gun Shop transaction. (R. 87: Miles, Trans., PageID 1431-36, 1438-39; R. 88: Miles, Trans., PageID 1601, 1688). A record check showed the truck was licensed to Johnson, who was on federal supervised release for a California case and thus prohibited from possessing a firearm. (R. 87: Miles, Trans., PageID 1433-34).

So Miles and another agent visited Coe on March 12, 2024, and learned that she bought the firearms for someone ultimately identified as Chew, who subsequently took the firearms. (R. 86: Coe, Trans., PageID 1049; R. 87: Miles,

Trans., PageID 1443; R. 88: Miles, Trans., PageID 1516-17). Coe positively identified a picture of the Akron house where Chew was staying during the purchases, which was Johnson's residence. (R. 87: Miles, Trans., PageID 1446-47). But when Miles showed her Johnson's picture, Coe said, "no, that's not him," adding that the man was "too old," at about 45 years old, whereas Chew was 32 years old. (R. 87: Miles, Trans., PageID 1454; R. 88: Miles, Trans., PageID 1518, 1622).

While Coe previously deleted her messages with Chew after not hearing from him, her phone, which she authorized Miles to search, contained a photograph of Chew in her car, with his distinctive braided ponytail. (R. 86: Coe, Trans., PageID 1054-57, 1221). Coe also agreed to text Chew at the same phone number that she used to communicate with him in the gun stores, and Chew responded to her message. (Id., PageID 1058-63).

When Miles visited Coe the next day, March 14, 2024, he learned that Coe and Chew had gone to Yours Truly after leaving the Cleveland Armory on February 29th, which the restaurant's surveillance video confirmed. (R 87: Miles, Trans., PageID 1458-61). Miles showed Coe a photographic lineup of six men, where she identified someone who mostly closely resembled Chew, but she "wasn't completely sure." (R. 86: Coe, Trans., PageID 1052-53; see also R. 87: Miles, Trans., PageID 1455-57). When Johnson's probation officer conducted "[a]

plain view walk-through" of Johnson's residence that day, she did not see any firearms, but Chew had left one week earlier. (R. 86: Frank, Trans., PageID 983-84; R. 88: Miles, Trans., PageID 1712-13).

A few weeks later, in April 2024, Manuel Perez, a federal employee, told Miles that the photograph found on Coe's phone depicted Chew, who Perez had seen regularly since January 2024. (R. 87: Perez, Trans., PageID 1264-67). A phone number listed on several of Chew's Greyhound passenger itinerary documents also matched a phone number that Chew previously provided to Perez. (Id., PageID 1265-66; R. 87: Cervantez, Trans., PageID 1246-49). The ticket had been purchased by someone with Chew's Hayward, California address. (R. 88: Miles, Trans., PageID 1545).

That led to investigators showing Coe a second six-person photographic lineup with Chew's driver's license photograph, where Coe positively identified Chew with "99.9" to 100 percent certainty. (R. 86: Coe, Trans., PageID 1069-70, 117, 1217; R. 88: Miles, Trans., PageID 1547-49). Coe admitted during cross-examination that she has short-term memory difficulties, experiences time gaps from anxiety, takes anti-anxiety medication, and has falsely told people that she suffered a stroke, so she could end relationships. (R. 86: Coe, Trans., PageID 1118-21). She denied experiencing memory difficulties when the gun purchases occurred, however. (Id., PageID 1208).

Cellular phone records also showed there were numerous texts between Coe and Chew's phones on February 22, 2024. (R. 87: Little, Trans., PageID 1333-35; R. 88: Miles, Trans., PageID 1538). The records showed that Chew's phone accessed cellular towers pointed at the Cleveland Armory between 11:30 a.m. and 2:30 p.m., on February 22, 2024, before returning to Johnson's house after the 3:10 p.m., sale. (R. 87: Little, Trans., PageID 1367-72; R. 88: Miles, Trans., PageID 1527).

Phone records similarly showed that on February 29, 2024, Chew's phone used towers near Coe's residence before going to the Cleveland Armory, Yours Truly, the Parma Gun Store, back to Coe's home, and finally to Johnson's residence. (R. 87: Little, Trans., PageID 1372-77). Phone records also reflected that Chew's phone accessed towers that matched the Greyhound travel itinerary for a ticketed passenger named Chew from February 15, 2024, through February 19, 2024. (Id., PageID 1350-61, 1363-67, 1377-85; R. 87: Cervantez, Trans., PageID 1236-39, 1246).

### F. The court denies a mistrial based on Agent Miles' disclosure that Chew was on supervised release.

While testifying on the third trial day, Agent Miles said he learned that Chew was on supervised release after identifying him on social media:

> Q. Were you able to obtain other information such as a date of birth? Sometimes social media pages people put that?

> A. No. I was not able to get any other identifiers other than the name. So what I did again, I used what I know. He was California, Chariece Chew, and eventually, I was able to get the date of birth.....
>
> Q. Okay. Now, in addition to the date of birth, were you able to obtain information about where he lived?
>
> A. Yes. Once I had the date of birth, I then proceeded with a law enforcement query on him with identifiers, and I was able to determine that he was on supervised release.

(R. 87: Miles, Trans., PageID 1467). The court sustained defense counsel's objection to the latter response. (Id.).

The government subsequently explained that Miles' response had been unexpected and thus suggested that the court provide a curative instruction. (Id., PageID 1467-70). The court excused the jury for the night, without objection or a defense request for a curative instruction. (Id., PageID 1467-69). And based on the court's preliminary instructions, the court had previously told the jury to ignore a question if it sustained an objection and follow instructions about evidence that was received for a limited purpose. (R. 85: Trans., PageID 911).

Chew's counsel moved for a mistrial the next morning. (R. 88: Trans., PageID 1488). Citing factors in Zuern v. Tate, 336 F.3d 478 (6th Cir. 2003), defense counsel conceded that the government's preceding questions were reasonable, Miles' answer was unsolicited, and there was no bad faith by the government. (Id., PageID 1489-90). Defense counsel noted that there was a

stipulation that Chew was convicted of a crime punishable by imprisonment for more than one year and that the case was not about whether Chew was a convicted felon or on supervised release. (Id., PageID 1492). Because there had been no immediate curative instruction, however, defense counsel doubted that a future instruction would cure the issue. (Id., PageID 1491, 1493).

The court agreed that: (1) the remark was unsolicited; (2) the government's questioning was reasonable; and (3) the statement was not in bad faith. (Id., PageID 1501-04). The court recalled that defense counsel sought overnight time to consider the best course, adding that curative instructions sometimes cause more harm than good, and that both parties thus agreed to adjourn and decide how to proceed the next day, which slightly favored Chew. (Id., PageID 1504-06). Even so, the court found that the remark was a small part of the evidence. (Id., PageID 1507-08). The court also observed that a previously objected-to page of Government Exhibit 53, which referenced Chew's supervision, had only been displayed to the jury for 3 seconds before it was adjusted and no longer visible. (Id., PageID 1507-08). Further, neither the court, nor its staff saw jurors pointing at the exhibit. (Id., PageID 1507). The court thus found the consideration factors did not warrant a mistrial, (id., PageID 1508), nor a new trial for the same reasons. (R. 102: Opinion, 2111-13).

## G. The defense opens the door to the government asking if and where a firearm was recovered.

During Miles' continued testimony, defense counsel asked about the absence of the physical firearms as trial evidence. (R. 88: Miles, Trans., PageID 1670). Defense counsel also asked Miles to confirm that he did not seize any of the guns, and the ATF did not possess them, which Miles did. (Id.).

After Miles' cross-examination, the government argued that the defense opened the door to previously excluded trace evidence by leading the jury to inaccurately believe that none of the purchased firearms were recovered. (Id., PageID 1689-90). The court agreed and permitted the government to ask limited questions about whether a firearm was seized and where it was seized, (id., PageID 1693), which the prosecution did. (R. 88: Miles, Trans., PageID 1700-01).

In final instructions, the court stated that Chew was presumed innocent. (R. 90: Trans., PageID 1802, 1905). It instructed that the jury's decision must be "based only on the evidence that you saw and heard here in Court" and not let "suspicions … influence your decision." (R. 90: Trans., PageID 1804; see also id., PageID 1811). It further instructed that the jury's "job [was] limited to deciding whether the United has proved the crimes charged," (id., PageID 1811), which the government also had to prove "happened reasonably close to" the "dates mentioned in the superseding indictment." (Id., PageID 1823-24).

The court explained actual and constructive possession, and that the defendant need not "own the firearm in order to possess it." (Id., PageID 1822). It also cautioned that the jury could only consider the parties' stipulated agreement "for the purpose of deciding whether the Defendant was previously convicted of an offense punishable by a term of imprisonment exceeding one year as is charged" and "not … for any other purpose." (Id., PageID 1823; see also id., PageID 1825, 1827-28). The court further instructed that the jury could not consider "any other collateral consequences or restrictions imposed on Mr. Chew as a result of … [his unspecified stipulated] crimes." (Id., PageID 1825).

### H. Chew is convicted of straw firearms purchase conspiracy and possession offenses.

After the evidence, the court's instructions, and the parties' arguments, the jury found Chew guilty of conspiring to straw purchase firearms and possessing firearms as a convicted felon (Counts 1, 3, 4 and 6), and not guilty of making false statements (Counts 2 and 5). (R. 80: Verdicts, PageID 671-76). Chew moved for a new trial, claiming defense counsel's performance was constitutionally ineffective for opening the door to the firearm recovery evidence. (R. 99: Motion, PageID 2058-61). The court disagreed, finding it unnecessary to analyze counsel's performance for deficiency because the resulting testimony from counsel's complained-of questioning "was brief and limited," it did not change the evidentiary mix for the charged offenses, and there was no reasonable probability

the result would have been different absent that testimony. (R. 102: Opinion, PageID 2115).

The district court thus denied Chew's new trial request, (id.), and imposed concurrent 180-month sentences for convictions. (R. 111: Judgment, PageID 2183). Chew appeals his convictions.

## SUMMARY OF THE ARGUMENT

Chew waived his right to challenge the evidence's sufficiency for his straw firearms purchase conspiracy convictions by not providing any substantive argument about those counts. Further, the trial evidence sufficiently showed that he possessed firearms as a felon. Chew stipulated that he had a prior felony conviction that was punishable by more than one year, and therefore could not purchase or possess firearms. Coe's testimony demonstrated that Chew knew that fact. Indeed, Coe testified that she twice straw purchased firearms for Chew, at his request, because he admitted he could not do so himself. Coe further testified that Chew took the firearms after the purchases, which showed his unlawful possession.

Greyhound records and cellular data also corroborated that Chew traveled to Akron before the purchases, communicated with Coe, and accessed cellar towers near the gun stores when those transactions occurred. A rational juror thus could readily credit that evidence, which need not have been further corroborated with

firearm recovery or other information, and conclude that Chew possessed firearms as a felon.

Additionally, the district properly denied Chew's mistrial motion based on an agent mentioning that Chew was on supervised release when explaining how he determined where Chew lived. Indeed, Chew had stipulated to his prior felony conviction that was punishable by over one year. So the jury would have learned his felon status, which was far more prejudicial, but not unfairly so, regardless. Further, the supervision status testimony did not reveal the nature of Chew's prior conviction. If anything, it may have favorably suggested that he received a lessor probationary sentence due to mitigating factors. Providing an immediate instruction would have risked suggesting it was an unfavorable factor instead. Plus, as a safeguard, the court provided sufficient final limiting instructions to the jury, which the jury is presumed to have followed.

Indeed, the jury demonstrated that it followed the court's instructions as a whole by returning not guilty verdicts on the false statement counts. And the evidence of Chew's guilt on the remaining counts was overwhelming. Because the statement about Chew's supervision status therefore was harmless, the court properly exercised its discretion in denying a mistrial.

Chew's ineffective assistance of counsel claim is premature on direct appeal since the record does not reveal defense counsel's trial strategy and

communications with Chew. Even if the record were sufficiently developed to address Chew's claim on direct appeal, Chew cannot show defense counsel's performance was constitutionally deficient for merely asking a few questions that opened the door to previously excluded firearm trace information. The record shows that defense counsel zealously challenged the government's evidence, including Coe's credibility, raised questions about the investigation's adequacy, and provided an alternate suspect for the actual buyer. That demonstrates that defense counsel aggressively defended Chew's interests throughout trial, which resulted in the jury acquitting Chew on the false-statement charges. See (R. 80: Verdicts, PageID 672, 675).

There also was no reasonable probability that the trial's outcome on the other straw purchase conspiracy and firearm possession counts would have been different but-for counsel opening the door to the firearm trace information. That information provided limited background evidence with little bearing on those offenses. Coe's testimony, which this Court does not reweigh, established that she straw purchased firearms as she and Chew agreed, and that Chew possessed those firearms afterwards. Physical recovery of those firearms was not an element of either offense. Thus, limited evidence that more than a year after the purchases an investigator learned that one straw-purchased firearm was recovered from a different California city than where Chew lived provided nothing more than

conjecture about how it got there. Chew also argued to the jury that Johnson, a fellow California native and convicted felon, who lived in Akron, was the actual purchaser. So Chew cannot show that the trace information substantially changed the evidence or his defense relevant to the charged offenses. Chew's counsel's performance therefore was not constitutionally deficient where there was no reasonable probability that but-for opening the door to limited trace information the trial's outcome would have been different.

In sum, the cumulative effect of the trace information and testimony such as Chew's supervised release status do not warrant a new trial. This Court therefore should affirm Chew's convictions.

## ARGUMENT

### I. THE EVIDENCE SUFFICIENTLY SHOWED THAT CHEW POSSESSED FIREARMS AS A FELON.

#### A. Standard of review.

This Court "review[s] a [preserved] challenge to the sufficiency of the evidence supporting a criminal conviction de novo." United States v. Robinson, 813 F.3d 251, 255 (6th Cir. 2016). Even so, "a defendant claiming insufficiency of the evidence bears a very heavy burden." United States v. Graham, 622 F.3d 445, 448 (6th Cir. 2010). There is a "strong presumption in favor of sustaining a jury conviction." United States v. Peters, 15 F.3d 540, 544 (6th Cir. 1994). The test is

"whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Both circumstantial and direct evidence "are accorded the same weight." United States v. Sherlin, 67 F.3d 1208, 1214 (6th Cir. 1995). And they must be viewed in a light most favorable to the government. United States v. Humphrey, 279 F.3d 372, 378 (6th Cir. 2002). In fact, "[c]ircumstantial evidence alone is sufficient to sustain a conviction." United States v. Blackwell, 459 F.3d 739, 760 (6th Cir. 2006) (cleaned up). Since the government prevailed in the district court, it must be given "the benefit of all reasonable inferences from the testimony." Graham, 622 F.3d at 448. Additionally, an appellate court may not reweigh the evidence, reconsider witness credibility, or substitute its judgment for the jury's. Id. All credibility issues on appeal therefore must be resolved in favor of the verdict. United States v. Maliszewski, 161 F.3d 992, 1006 (6th Cir. 1998). Because "the question of [a defendant's] intent is generally considered to be one of fact to be resolved by the trier of facts [,...] the determination thereof should not be lightly overturned." United States v. Daniel, 329 F.3d 480, 487 (6th Cir. 2003). A defendant challenging the trial evidence's sufficiency therefore bears "a very heavy burden." Id. at 485 (cleaned up).

### B. The elements of a straw purchase conspiracy and possessing a firearm as a felon.

To convict Chew of a straw firearm purchase conspiracy, the government had to show that he conspired "to purchase, any firearm in or otherwise affecting interstate or foreign commerce for, on behalf of, or at the request or demand of any other person, knowing or having reasonable cause to believe that such other person" falls under 18 U.S.C. § 922(d)'s restrictions. 18 U.S.C. § 932(b)(1). That includes a person who has been convicted of a crime punishable by more than one year of imprisonment. 18 U.S.C. § 922(d)(1).

Whereas to convict Chew of possessing a firearm as a felon under Section 922(g)(1), the government needed to prove that: (1) he was a felon; (2) he knew he had a prior felony conviction; (3) he possessed a firearm; and (4) the firearm traveled in or affected interstate or foreign commerce. Rehaif v. United States, 588 U.S. 225, 227 (2019); United States v. Walker, 734 F.3d 451, 455 (6th Cir. 2013). "Actual or constructive possession is sufficient to give rise to criminal liability under § 922(g)," and both "may be proved by circumstantial evidence." United States v. Davis, 577 F.3d 660, 671 (6th Cir. 2009) (cleaned up). "'Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" United States v. Malone, 308 F. App'x 949, 952 (6th Cir. 2009) (quoting United

States v. Craven, 478 F.2d 1329, 1333 (6th Cir. 1973), abrogated on other grounds by Scarborough v. United States, 431 U.S. 563 (1977))). "Proof that the person has dominion over the premises where the firearm [or ammunition] is located is sufficient to establish constructive possession" of the firearm or ammunition. United States v. Kincaide, 145 F.3d 771, 782 (6th Cir. 1998) (cleaned up).

### C. Chew waived his sufficiency challenge to the straw purchase conspiracy counts.

Chew's argument summary section alludes to the sufficiency of the straw purchase conspiracy charges (Counts 1 and 4), but only passingly mentions them once in an argument summary sentence, argument heading, and his brief's overall conclusion. (Doc. 8: Chew's Br., Pages 26, 29, 52). His argument text provides no required record citations, nor discussion about Section 932(b)(1)'s elements or corresponding trial evidence in challenging his convictions for possessing firearms as a felon instead (Counts 3 and 6). (Id., Pages 30-37); Fed. R. App. P. 28(a)(8)(A) (appellant's argument section must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). That is insufficient to challenge his Section 932(b)(1) convictions since his argument solely focuses on possession, when a straw purchase conspiracy instead requires proof of an agreement to straw purchase a firearm, not the additional possession of it. 18 U.S.C. § 932(b)(1).

Further, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Robinson, 390 F.3d 853, 886 (6th Cir. 2004). This Court also has made clear that an appellant cannot supply those reasons for the first time in a reply brief. See United States v. Reed, 163 F.4th 338, 356 (6th Cir. 2025) (citing United States v. Moore, 376 F.3d 570, 576 (6th Cir. 2004)). Thus, only Chew's sufficiency argument about firearm possession (Counts 3 and 6) is properly before this Court, but affirmance is warranted on those counts, as addressed below.

### D. The evidence sufficiently showed that Chew possessed firearms.

The evidence sufficiently established that Chew knowingly possessed four firearms—two Micro Draco pistols on or about February 22, 2024 (Count 3), and a Micro Draco pistol and a Mini Draco pistol on February 29, 2024 (Count 6), respectively, after Coe straw purchased them for him. Coe testified that "Charles," who she met online and identified in-court as Chew, traveled from Texas or California to Ohio to stay with his "brother." (R. 86: Coe, Trans., PageID 997-1003). During their first in-person meeting, Chew asked Coe to buy firearms for a security business he was starting. (Id., PageID 1003-04, 1061-62, 1067). He told Coe he was unable to buy firearms himself, however, because he had served jailtime. (Id., PageID 1004, 1106-07, 1214).

Coe agreed and picked up Chew in Akron on February 22, 2024. (Id., PageID 1004-05). They drove to the Cleveland Armory, where he told her to buy two Draco Mini firearms, provided her money for the purchase, and waited in the car while she did so. (Id., PageID 1005-20). She texted Chew questions about the firearms while inside the store. (Id., PageID 1009, 1137-38, 1214-15). And to complete the purchase, Coe falsely represented on ATF Form 4473 that she, rather than Chew, was the actual firearms buyer. (Id., PageID 1018-20, 1145).

Cleveland Armory staff, receipts, and video also confirmed that Coe purchased two Micro Draco pistols. (R. 87: Bowser, Trans., PageID 1280-1303; R. 87: Miles, Trans., PageID 1448; R. 88: Miles, Trans., PageID 1527). Coe testified that she returned to the car with the purchases and drove Chew back to Akron, where Chew took the guns upstairs into the house. (R. 86: Coe, Trans., PageID 1025-28, 1150-51). That showed Chew's actual possession of those firearms.

Coe also testified about making a second set of Draco rifle purchases at Chew's request on February 29, 2024. (Id., PageID 1039-48). That day, Chew picked up Coe at her residence in Johnson's Chevrolet Tahoe and drove her to the Cleveland Armory. (Id., PageID 1029, 1191; R. 87: Miles, Trans., PageID 1433). And security footage and photos confirmed that Coe attempted to purchase

firearms there that day, but the background check system was not operating. (R. 86: Coe, Trans., PageID 1029-36).

Chew, who was wearing a light-colored sweatshirt, was captured on video, departing with Coe before going to a nearby Yours Truly restaurant, and the Parma Gun Shop sale. (Id., PageID 1033-46; R. 87: Miles, Trans., PageID 1433; see also R. 86: Johnson, Trans., PageID 962). Chew remained in the car while Coe used the money he provided to purchase a Micro Draco pistol and Mini Draco pistol that he requested. (R. 86: Coe, Trans., PageID 1041-48). Coe again falsely represented on ATF Form 4473 that she, rather than Chew, was the actual firearms buyer. (Id., PageID 1043-45). Store surveillance and receipts confirmed that she made the purchase. (R. 87: Miles, Trans., PageID 1448; R. 88: Miles, Trans., PageID 1601, 1688). And Coe testified that Chew dropped her off at her residence and "took them [the guns] with him" when he departed, which showed his constructive firearm possession. (R. 86: Coe, Trans., PageID 1048).

Beyond testimony about the purchases, Coe identified the phone number Chew was using, which was subscribed to "James House" at a fictitious street address in Hayward—the same city where Chew lived. (Id., PageID 1002, 1060; R. 87: Little, Trans., PageID 1342; R. 87: Miles, Trans., PageID 1449-53; R. 88: Miles, Trans., PageID 1519-20). Coe also identified Chew with 99.9 to 100 percent certainty from a photographic a lineup on May 3, 2024, and again during

trial. (R. 86: Coe, Trans., PageID 1002-03, 1069-70, 1176-77, 1217; R. 88: Miles, Trans., PageID 1546-49).

Cellular phone records also showed there were numerous texts between the number Chew was using and Coe's telephone on February 22, 2024. (R. 87: Little, Trans., PageID 1333-35; R. 88: Miles, Trans., PageID 1538). Additionally, Chew's phone accessed cellular towers pointed at the Cleveland Armory between 11:30 a.m. and 2:30 p.m., on February 22, 2024, before returning to the Akron home where he was staying, (R. 87: Little, Trans., PageID 1367-70), after the 3:10 p.m. sale occurred. (R. 88: Miles, Trans., PageID 1527). And on February 29, 2024, Chew's phone used towers near: (1) Coe's residence between 10:54 a.m. until 11:48 a.m.; (2) the Cleveland Armory and Yours Truly area at approximately 12:30 p.m.; and (3) the Parma Gun Store between 1:00 p.m., and 3:30 p.m., before resuming using towers near the Akron residence where he was staying that evening. (R. 87: Little, Trans., PageID 1372-77).

Johnson, who had known Chew since 2018, confirmed that Chew stayed with him for about two weeks in late February 2024, after Johnson picked up Chew at the Akron Greyhound bus station. (R. 86: Johnson, Trans., PageID 959-64). Johnson also confirmed that Chew borrowed his car, and identified his Tahoe in a February 29, 2024 Cleveland Armory surveillance image. (Id., PageID 961-62).

Greyhound bus records also showed a passenger named Chew departed from California on February 15, 2024, and arrived in Akron on February 19, 2024, which was consistent with Chew's cell phone's data that matched those locations. (R. 87: Cervantez, Trans., PageID 1236-39, 1246; R. 87: Little, Trans., PageID 1350-61, 1364-67). A phone number listed on several passenger itinerary documents also matched a phone number that Chew provided to Perez. (R. 87: Cervantez, Trans., PageID 1246-49; R. 87: Perez, Trans., PageID 1265-66). And the ticket was purchased by someone with the same Hayward, California address as Chew. (R. 88: Miles, Trans., PageID 1545; see also generally, R. 87: Cervantes, Trans., PageID 1240). Johnson testified that Chew stayed through early March, and he dropped off Chew at the Akron Greyhound bus station for his return to California. See generally, (R. 86: Johnson, Trans., PageID 960, 964). Greyhound records confirmed a return trip for a passenger named Chew from Akron on March 7, 2024, which concluded in Modesto, California, on March 16, 2024. (R. 87: Cervantes, Trans., PageID 1250-53). And cellular data for the phone Chew was using again mirrored the Greyhound travel itinerary. (R. 87: Little, Trans., PageID 1377-85).

Meanwhile, Perez lost contact with Chew between late February and early March 2024. (R. 87: Perez, Trans., PageID 1275). But the number Chew used to communicate with Coe, and to access towers consistent with when and where the

Ohio firearms sales occurred, connected to a tower near Chew's Hayward, California residence on April 18, 2024, when Perez visited Chew there. (Id., PageID 1268; R. 87: Little, Trans., PageID 1385, 1388-91).

That combined evidence was sufficient to convict Chew of possessing the firearms as a felon in February 2024, as charged. Indeed, Coe's testimony established that Chew took possession of the firearms he had her straw purchase on February 22nd and 29th. Even uncorroborated testimony of an accomplice is sufficient to support a conviction. United States v. Stewart, 628 F.3d 246, 255 (6th Cir. 2010) (citing United States v. Owens, 426 F.3d 800, 808 (6th Cir. 2005)); Graham, 622 F.3d at 448 (collecting cases); Sherlin, 67 F.3d at 1214. Chew thus overlooks that binding authority in seeking to challenge Coe's credibility, which does not show the possession evidence was insufficient for conviction. See United States v. Burns, 298 F.3d 523, 535 (6th Cir. 2002) ("sufficiency-of-the-evidence appeals are no place for arguments regarding a government witness's lack of credibility" (cleaned up)); United States v. King, 272 F.3d 366, 370 (6th Cir. 2001) (attacks on witness credibility are "challenges to the quality of the government's evidence and not [its] sufficiency"). Further, here, there was corroborating testimony about Chew's travel, connection to Coe, and presence near the gun stores when the sales occurred.

"[P]hysical evidence [also was] not required to sustain a conviction." United States v. Henderson, 626 F.3d 326, 341 (6th Cir. 2010) (citing Graham, 622 F.3d at 448); United States v. Davis, 306 F.3d 398, 409 (6th Cir. 2002) (same). So it was inconsequential that the firearms were not recovered from Chew since that did not undercut Coe's testimony that he possessed them after the purchases, which the jury credited. Further, "multiple people" can have joint constructive possession over contraband contemporaneously. United States v. Martin, Nos. 21-4019/4081, 2022 WL 17078715, *4 (6th Cir. Nov. 18, 2022) (citing Craven, 478 F.2d at 1333).

And this Court assesses the admitted evidence for sufficiency. Thus, the possibility that other evidence of guilt or innocence might exist did not preclude Chew's convictions where the presented evidence sufficiently established the offenses' elements. See United States v. Hearn, 500 F.3d 479, 482-83 (6th Cir. 2007).

At bottom, the jury heard Chew's arguments about the absence of images or corroborating evidence tying Chew to the firearms. (R. 90: Trans., PageID 1843, 1850-51, 1856-61, 1866-70). The jury also heard the defense's argument that Chew was not present in Coe's car on February 22nd because Bowser noticed trash strewn in Coe's car, but did not see Chew in the front when he loaded the firearms into Coe's backseat. (Id., PageID 1859, 1870-71). And it permissibly rejected

those arguments as it was entitled to do. Chew's attempt to rehash those issues improperly asks this Court to reweigh evidence and reconsider Coe's credibility, which this Court does not do, Graham, 622 F.3d at 448, in viewing the direct and circumstantial evidence in the light most favorable to the prosecution. Humphrey, 279 F.3d 378. Rather, this Court "draw[s] all inferences and resolve[s] any credibility determinations in favor of preserving the jury's verdict." United States v. Siefert, 161 F.4th 379, 389 (6th Cir. 2025).

Chew's reliance on a differing close-proximity constructive possession case involving a firearm seizure also fails to show that a rational juror would not have found that Chew actually possessed firearms on February 22nd, and constructively possessed firearms on February 29th, based on Coe's testimony and corroborating evidence. In United States v. Grubbs, 506 F.3d 434 (6th Cir. 2007), a "handgun [was] found under [Grubbs'] brother Paul's mattress at the time of the arrest" and there was "no evidence that Grubbs had immediate access to the weapon," other than being present in the house when arrested. Id. The eyewitness testimony that Grubbs possessed a firearm stemmed from an incident a month or two earlier, and that witness was unsure if it matched the gun that investigators seized. Id. at 437-38, 441. Conversely, here, Coe expressed no uncertainty that Chew possessed and had immediate access to the firearms she purchased on his behalf. See Grubbs, 506 F.3d at 440. Her testimony therefore contained sufficient temporal proximity

and directly connected Chew to the firearms specified in the indictment, which the Grubbs case lacked, making the constructive firearm possession alleged there, without specific corroborating testimony, inapposite.

In sum, after witnessing the testimony and weighing all the evidence presented, the jury decided that Chew possessed firearms as a felon. While Chew may disagree with the jury crediting Coe's testimony, that determination is not subject to review. And its decision finding him guilty is entitled to a high degree of deference, which Chew has not overcome. See United States v. Hunt, 521 F.3d 636, 647 (6th Cir. 2008). This Court therefore should affirm all his convictions.

## II. THE DISTRICT COURT PROPERLY DENIED A MISTRIAL BASED ON AN AGENT MENTIONING THAT CHEW, WHO ALREADY STIPULATED TO HAVING A PRIOR CONVICTION PUNISHABLE BY MORE THAN ONE-YEAR, WAS ON SUPERVISED RELEASE.

### A. Standard of review.

This Court reviews for an abuse of discretion a district court's denial of a mistrial based on improperly admitted evidence. United States v. Caver, 470 F.3d 220, 243 (6th Cir. 2006).

### B. Mistrial for an improper witness statement.

A defendant seeking a mistrial based on improper witness testimony must show the evidence not only was improper, United States v. Howard, 621 F.3d 433, 458-59 (6th Cir. 2010), but "so clearly improper and prejudicial to the defendant[] that the harm could not be erased by any instruction which the court might give."

United States v. Smith, 601 F.3d 530, 538 (6th Cir. 2010) (citation omitted). This Court has recognized, however, that although testimony about a defendant's "prior incarceration, jail, prison, and arrest should be avoided," the "mere use of these words ... is not reversible error per se." United States v. Alsop, 12 F. App'x 253, 258 (6th Cir. 2001) (citing United States v. Veteto, 701 F.2d 136, 139-40 (11th Cir. 1983)).

This Court considers several factors in determining whether an improper witness statement warranted a mistrial, including: "(1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant." Zuern v. Tate, 336 F.3d 478, 485 (6th Cir. 2003) (citing United States v. Forrest, 17 F.3d 916, 920 (6th Cir. 1994)). That final factor includes considering whether there "was also ample additional evidence on which to rest a conviction." Forrest, 17 F.3d at 921. This Court has not held that any factor, such as "lack of a limiting instruction is dispositive," but rather is simply one of several considered on balance. See, e.g., United States v. Charles, Nos. 22-5424/5427, 2024 WL 4554806, *12 (6th Cir. 2024).

### C. Agent Miles' mention of Chew's supervised release status was harmless.

The district court properly denied Chew's mistrial request based on Agent Miles' mention of Chew's supervised release status. (R. 88: Miles, Trans., PageID 1467; R. 88: Trans, PageID 1501-08). This Court has concluded in an analogous "parolee status" disclosure context that "any error was harmless." United States v. Wiseman, 932 F.3d 411, 419 (6th Cir. 2019) (footnote omitted). Wiseman considered a similar no reversible error case by this Court where a testifying police officer revealed the defendant's parolee status in explaining why no home search warrant was required. Id. at 420 (discussing United States v. Griffin, 476 F. App'x 592, 598 (6th Cir. 2011)). Both panels agreed that when, as here, "the government is required to prove as an element of the offense that the defendant has previously committed a felony, as in a [felon-in-possession] prosecution, the potential for prejudice [from the jury hearing evidence of parole status] is substantially lessened." Wiseman, 932 F.3d at 420 (quoting Griffin, 476 F. App'x at 598).

Further, in both cases, ""[t]he jury was already well aware that the defendant had a felony conviction because [he] was being prosecuted under 18 U.S.C. § 922(g)(1)," and the defendants stipulated to their prior conviction. Id. The evidence against the defendants also was overwhelming, making the comment in both cases harmless. Wiseman, 932 F.3d at 420; Griffin, 476 F. App'x at 598.

This Court also has found mere references to a defendant's prior incarceration harmless. In United States v. Penson, 141 F. App'x 406 (6th Cir. 2005), the prosecutor did "not intentionally elicit[]" "inadvertent slips by two legally unsophisticated witnesses" that did not reveal "the nature of Penson's criminal history." Id. at 411. The evidence against the defendant also was "overwhelming," which thus did not warrant a mistrial. Id.

Similarly, this Court found no mistrial was warranted where "defense counsel's cross-examination of a government witness about his relationship to defendant" elicited a "a single reference to" the defendant's release from "the penitentiary." Alsop, 12 F. App'x at 258. Notably, "[a] curative instruction would have emphasized and may have undermined defense counsel's strategy to ignore the remark." Id. Because there also "was ample evidence of Defendant's guilt" this Court found no "reversible error" in the district court "not issuing a sua sponte curative instruction." Id.

While this Court considers whether such statements simply informed the jury of the defendant's past incarceration rather than the nature of a defendant's criminal history, Penson, 2005 WL 1579499 at *4, even when the appealed reference specified the reason for the defendant's imprisonment, this Court still found a mistrial unwarranted. In one case for instance, an ATF agent twice referenced the defendant's prior imprisonment "for robbery," which seemed

"anything but accidental" during a drug-trafficking trial, given the trial court instructing the prosecutor to warn the witness "not to testify, during rebuttal, to Forrest's criminal past." Forrest, 17 F.3d at 920. Still, this Court "found no abuse of discretion in the district court's failure to grant a mistrial" where the trial court gave "a clear admonition and the prosecution had offered ample other evidence of guilt." Zuern, 336 F.3d 485 (discussing Forrest, 17 F.3d at 921). This Court has also found a more prejudicial "improper statement about a prior murder in the context of a murder trial" did not warrant habeas corpus relief. Id. at 486. The supervised-release comment here was much more innocuous than the criminal history references in Forrest and Zuern, where relief was unwarranted.

Miles' comment occurred in response to a reasonably asked open-ended question by the prosecutor about how Miles identified Chew's address from a photograph, and was not made in bad faith. (R. 87: Miles, Trans., PageID 1467; see also R. 88: Trans., PageID 1502). As the district court recognized, Chew's probation officer, Perez, testified about being a "'government employee' acquainted with Mr. Chew for unspecified reasons." (R. 102: Opinion, PageID 2111). While Miles slipped in mentioning Chew's supervision status, that was "little more than incidental information," United States v. Hines, 943 F.2d 348, 353 (4th Cir. 1991), where Chew had stipulated, as an element of the Section 922(g)(1)

charges, to his prior conviction that was punishable by more than one-year imprisonment. (R. 67: Stipulation, PageID 517).

Consistent with Chew's stipulation, the government's opening statement properly mentioned that Miles learned during the investigation that Chew "had been previously convicted of a crime punishable by imprisonment for more than one year, thereby prohibiting him from possessing a firearm." (R. 85: Trial Trans., PageID 929). The court also later read the jury Chew's stipulation and twice admonished that this detail, if accepted by the jury, could not be considered "for any other purpose." (R. 90: Trans., PageID 1823, 1825, 1827-28). Defense counsel also mentioned Chew's stipulation to the jury, and argued the only issue for the jury to decide was whether Chew conspired to purchase the firearms. (Id., PageID 1864, 1868-69). So the jury would have learned about Chew's "past involvement with the criminal justice system even without [the supervised-release] comment." Wiseman, 932 F.3d at 420. The fact of conviction was far more prejudicial, but not unfairly so. The additional supervision status comment thus did not cause any prejudice since it did not reference the nature of Chew's prior drug-trafficking conviction.

While, as the district court recognized, the jury knew from a combination of Johnson and Frank's testimony that Chew was associated with Johnson and that they were detained together previously, any prejudice at most was "slight."

(R. 102: Opinion, PageID 2112). If anything, knowing that Chew had a conviction punishable by more than one year and was on supervision may have favorably suggested that he received a lesser sentence for mitigating reasons. Thus, learning about his supervision, after the jury expressed curiosity about Perez's work-related association with Chew, was harmless. (R. 87: Trans., PageID 1272-73).

While Chew cites several cases finding no reversible error where the court gave immediate curative instructions, (Doc. 8: Chew's Br., Page 40), that single factor's absence has not been dispositive in other cases. See, e.g., Wiseman, 932 F.3d at 415-16, 420; Alsop, 12 F. App'x at 258; see also Penson, 141 F. App'x at 411 (where there was no curative instruction because defense counsel did not accept the court's curative instruction offer). Here, all but that one consideration factor weighed against granting a mistrial. And even with that single instructional factor slightly favoring Chew, he did not request an immediate admonishment for the jury to disregard the information before the court excused the jury that day, without objection. (R. 87: Trans., PageID 1467-69). Even if he had, doing so would have risked causing more harm than good by suggesting it was unfavorable instead. See (R. 88: Trans., PageID 1505-08).

As the court recognized, the comment also "was only a small part of the evidence" at his trial on firearms charges. (R. 88: Trans., PageID 1504). Chew claims in passing, without citation to the record, that "Exhibit 53 [also] went to the

jury bearing unredacted language reflecting [Chew's residence] verification by a probation officer," but he is mistaken. (Doc. 8: Chew's Br., Page 39 (emphasis added)); see also Fed. R. App. P. 28(a)(8)(A) (requiring appellant's argument section to contain relevant record citations). The district court observed that exhibit page "was only visible for 3 seconds before it was adjusted and [the information] no longer visible. (R. 88: Trans., PageID 1507-08). Further, neither the court nor its staff saw jurors pointing at the exhibit. (Id., PageID 1507). The government also confirmed at the close of its case-in-chief that it redacted the objected-to page from that exhibit, and defense counsel had "[n]o objection" to the exhibit's admission into evidence given that redaction. (R. 90: Trans., PageID 1797-98). Thus, it did not go to the jury.

Moreover, the court stated in final instructions that Chew was presumed innocent. (Id., PageID 1802, 1905). Consistent with its prior suggestion after denying a mistrial, (R. 88: Trans., PageID 1510), the court further instructed that the jury could not consider "any other collateral consequences or restrictions imposed on Mr. Chew as a result of … [his unspecified stipulated] crimes." (R. 90: Trans., PageID 1825). The jury was presumed to have followed those instructions. Zafiro v. United States, 506 U.S. 534, 540 (1993) (cleaned up). In fact, the jury acquitted Chew on the false-statement charges. (R. 80: Verdicts, PageID 672, 675). Whereas evidence on the remaining charges demonstrated that

the mention of his supervision status did not materially affect the jury's decision to convict him on those counts.

Coe identified Chew as the person who asked her to buy the firearms and who subsequently took the firearms. (R. 86: Coe, Trans., PageID 1005-20, 1025-50, 1061-62, 1067, 1106-07, 1214-15). Cell phone data showed text messages between Coe and Chew during the relevant time period. (Id., PageID 1009, 1137-38, 1214-15; R. 87: Little, Trans., PageID 1333-35; R. 88: Miles, Trans., PageID 1538). Greyhound bus records and corresponding cell phone location data also showed that Chew visited Akron, including the two gun store areas when the straw purchases occurred, before returning to California. (R. 87: Cervantez, Trans., PageID 1236-38, 1246-53; R. 87: Perez, Trans., PageID 1265-66; R. 87: Little, Trans., PageID 1350-61, 1363-85, 1388-91; see also generally, R. 86: Johnson, Trans., PageID 959-61, 964; R. 86: Coe, Trans., PageID 1060). Yours Truly surveillance video corroborated that Coe and Chew were together before the second firearms purchase. (R. 86: Coe, Trans., PageID 1033-46; R. 87: Miles, Trans., PageID 1433). Thus, Miles' isolated statement and the jury briefly seeing an unredacted exhibit referencing a probation officer verifying Chew's address, considered with the totality of incriminating evidence was harmless beyond a reasonable doubt.

## III. CHEW CANNOT SHOW THAT DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE AT TRIAL.

### A. Standard of review.

Ineffective assistance of counsel claims are mixed questions of law and fact, which this Court reviews de novo. United States v. Ferguson, 669 F.3d 756, 761 (6th Cir. 2012).

### B. The record is insufficiently developed to address Chew's ineffective assistance of counsel claim on direct appeal.

The record is insufficiently developed to address Chew's claim on direct appeal that defense counsel was ineffective for opening the door to evidence that one straw-purchased firearm was recovered. Generally, both the Supreme Court and this Court have held that a motion under 28 U.S.C. § 2255 is the "preferred mode for raising a claim of ineffective assistance of counsel." Id. at 762 (citing Massaro v. United States, 538 U.S. 500, 504 (2003)). Deferring ineffective assistance of counsel claims to Section 2255 proceedings allows the matter to be litigated first in the district court, "which is 'the forum best suited to developing the facts necessary to determining the adequacy of representation' because it may take testimony from witnesses including the defendant, prosecution, and counsel." Id. (quoting Massaro, 538 U.S. at 505-06). Further, since the same trial judge may adjudicate the Section 2255 motion, that judge, "having observed the earlier trial, should have an advantageous perspective for determining the effectiveness of

counsel's conduct and whether any deficiencies were prejudicial." Massaro, 538 U.S. at 506. Thus, this Court generally does not permit defendants to raise ineffective assistance of counsel claims for the first time on direct appeal. Ferguson, 669 F.3d at 762 (collecting cases).

Even so, this Court will make an exception and consider such claims on direct appeal if the parties have adequately developed the record regarding the assistance provided. Id. But Chew's trial record is not sufficiently developed to assess his deficient performance claim, where it only contains defense counsel's brief explanation that her firearm-recovery questions stemmed from her mistaken recollection that the government first asked if the ATF had seized any of the purchased guns. (R. 88: Trans., PageID 1690-97).

Further, defense counsel argued from the outset during her opening statement that "they didn't recover the guns, and the Government didn't do any due diligence in that regard." (R. 85: Trans., PageID 936). While defense counsel's reasoning for that is unclear, it could have been a reasonable defense strategy in focusing on lack of evidence or adequate investigation. Hence, without the full benefit of counsel's reasoning and communications with Chew, and the district court's evaluation of attorney-client discussions about trial strategy, the record is insufficiently developed to address Chew's claim on direct appeal. Even

if this Court finds the record sufficiently developed, Chew's claim still fails under the Strickland standard, however.

### C. Ineffective assistance of counsel.

To establish ineffective assistance of counsel regarding that question, Chew must make two showings. First, he must prove his counsel's performance was seriously deficient. Strickland v. Washington, 466 U.S. 668, 687 (1984). Second, he must show that the deficient performance prejudiced his defense. Id. at 687. To show that counsel's performance was deficient, Chew must demonstrate that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688. In applying Strickland, "'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."' United States v. Fortson, 194 F.3d 730, 736 (6th Cir. 1999) (quoting Strickland, 466 U.S. at 689). Further, to establish prejudice, Chew "must show a reasonable probability that, but for counsel's errors,... [the result] would have been different." Weinberger v. United States, 268 F.3d 346, 352 (6th Cir. 2001).

### D. Chew has not shown deficient performance from defense counsel's cross-examination of Miles, nor prejudice resulting from testimony about one firearm's recovery.

Chew has not shown defense counsel's performance was constitutionally deficient from asking questions during a several-day trial that resulting in limited

information about one firearm's recovery, (R. 88: Trans., PageID 1670, 1693, 1700-01), particularly given counsel's zealous trial representation. Defense counsel repeatedly challenged the government's evidence, including Coe's credibility, raised questions about the investigation's adequacy, and provided the jury an alternate suspect—Johnson, which shows that counsel's performance was not deficient. See e.g., (R. 86: Johnson, Trans., PageID 967-69; R. 86: Frank, Trans., PageID 987; R. 86: Coe, Trans., PageID 1115-1126, 1148-51, 1165-80, 1204-05; R. 87: Perez, PageID 1270-71; R. 87: Bowser, PageID 1318-19; R. 88: Miles, Trans., PageID 1564-65, 1589-1605, 1616-22, 1630-55, 1668-69, 1681-89).

Further, although defense counsel's firearm-recovery questions reportedly stemmed from a mistaken recollection about the direct examination's scope, (R. 88: Trans., PageID 1696), as sometimes occurs during the midst of trial, that nevertheless did not prejudice Chew in opening the door to limited previously-precluded questions about whether the agent learned that a firearm was seized and where it was seized. See generally, (R. 85: Trans., PageID 722). That limited trace-report discovery information was not prejudicial to the case's outcome, much less Chew's defense.

In fact, the district court previously recognized in granting the defense's motion in limine to exclude the evidence that it was "largely speculative" and its absence would not prejudice the government. (R. 85: Trans., PageID 722). In

other words, it was not material to the straw-purchase and firearm possession charges against Chew.

In particular, the jury was tasked with deciding whether Chew conspired with Coe to straw purchase firearms and then possessed those firearms as a felon in the Northern District of Ohio on February 22 and 29, 2024, as charged. (R. 27: Superseding Indictment, PageID 187-90). Miles' testimony about his August 2025 discovery that one of the purchased firearms was recovered in Berkeley, California, (R. 88: Miles, Trans., PageID 1701), but not from Chew in Hayward, California, during Perez's April 2024 home visit, (R. 87: Perez, Trans., PageID 1268-71), was not material to the charged firearm offenses that occurred in the Northern District of Ohio in February 2024. As defense counsel highlighted during closing argument, "one of the firearms … was recovered in California, but we don't know anything about that." (R. 90: Trans., PageID 1843).

At best, that recovery information was equivocal background or res gestae evidence completing the story of where one 2024 straw-purchased firearm eventually landed. But that had little bearing on the charged offenses since it did not answer how the firearm was transferred to California, and more importantly by whom. That later point was the crux of what made the charged conduct illegal.

In fact, defense counsel argued the only issues for the jury to decide were whether Chew conspired to purchase the firearms and possessed those firearms.

(Id., PageID 1868-69, 1874). Defense counsel also argued that Johnson, who like Chew was from California, could have been the actual firearms buyer instead. (R. 90: Trans., PageID 1856-58, 1860-63, 1865-67, 1869-70, 1875). Accordingly, while Chew argues "[e]stablishing that no firearm was recovered was indeed central to the defense….," (Doc. 8: Chew's Br., Page 47), his defense hinged on claiming Johnson and Coe set him up instead. But the trace information neither answered that question nor harmed his defense. Thus, Chew cannot establish he was prejudiced from counsel opening the door to conjecture evidence.

Chew's comparison between a decision declining to find deficient performance where defense counsel opened the door to damaging testimony due to a strategic dilemma, Jones v. Harry, 405 F. App'x 23, 27-28 (6th Cir. 2010), and other nonbinding decisions by district courts, and one state court, reaching the opposition conclusion where the alleged error stemmed from counsel's misunderstanding, do not demonstrate otherwise. (Doc. 8: Chew's Br., Page 46). The trace information admitted due to Chew's counsel's misrecollection here was not harmful. It did not preclude Chew from advancing his "not me" defense. And Coe's testimony and corroborating contemporaneous evidence already showed that Chew committed the straw-purchase conspiracy and firearm possession offenses in February 2024, regardless of what he ultimately did with one firearm afterward. This Court does not reweigh that evidence. Graham, 622 F.3d at 448.

As the district court correctly noted, "the jurors were not asked to [further] decide whether Mr. Chew owned or distributed the firearms while in California." (R. 102: Opinion, PageID 2115). The single firearm recovery therefore, as the court found, "did not materially change the mix of information that the jury had, let alone decisively affect the trial's result." (Id.). So Chew cannot show that but-for counsel's error the trial's outcome would have been different. This Court therefore should reject his ineffective assistance claim. See, e.g., Payne v. Warden, Lebanon Corr. Inst., 543 F. App'x 485, 490 (6th Cir. 2013) (concluding based on "the strong eyewitness testimony" that "the state court did not violate clearly established federal law in rejecting Payne's ineffective assistance claim, [based in part on opening the door to testimony,] for lack of prejudice" (cleaned up)).

## IV. THE COMBINED EFFECT OF ALLEGED ERRORS DID NOT RENDER CHEW'S TRIAL FUNDAMENTALLY UNFAIR.

### A. Standard of review.

This Court reviews "the cumulative effect of errors made at trial de novo in order to determine whether the errors created a trial that amounted to a denial of due process." United States v. Billman, 257 F. App'x 904, 914 (6th Cir. 2007).

### B. Cumulative error.

A trial need not be "perfect" to withstand a due process challenge. United States v. Hernandez, 227 F.3d 686, 697 (6th Cir. 2000). While in some cases, the combined effect of harmless errors can be so prejudicial that they

constituted a due process violation, United States v. Adams, 722 F.3d 788, 832 (6th Cir. 2013), to prevail under a cumulative-error analysis, a defendant "must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." United States v. Warman, 578 F.3d 320, 349 (6th Cir. 2009).

In conducting a cumulative-error analysis, several appellate courts have examined "the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case." United States v. Powell, 652 F.3d 702, 706 (7th Cir. 2011); accord United States v. Margarita Garcia, 906 F.3d 1255, 1281 (11th Cir. 2018); United States v. Pena-Santo, 809 F.3d 686, 702 (1st Cir. 2015). "Because cumulative error analysis examines only actual errors," "the accumulation of non-errors cannot collectively amount to a violation of due process." United States v. Underwood, 859 F.3d 386, 395 (6th Cir. 2017) (cleaned up); United States v. Wellman, 26 F.4th 339, 354 (6th Cir. 2022) ("claim of cumulative error fails for want of error" (cleaned up)).

### C. The combined effect of the complained-of errors does not warrant a new trial.

Chew cannot show that the combined effect of defense counsel mistakenly opening the door to previously-precluded firearm trace evidence with other

complained-of testimony, such as his supervision status, warrants a new trial. Even if this Court were to determine that multiple errors existed, no combination of the alleged errors could leave this Court with the "distinct impression" that Chew's trial was fundamentally unfair, given the overwhelming evidence that he participated in straw firearms purchase conspiracies and possessed the straw-purchased firearms as a felon. United States v. Parker, 997 F.2d 219, 221 (6th Cir. 1993). This Court therefore should affirm.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court affirm Chew's convictions.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By: /s/ Laura McMullen Ford
Laura McMullen Ford
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Telephone No: (216) 622-3817
Facsimile No: (216) 522-8355
Laura.Ford@usdoj.gov

## CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION

I hereby certify that the foregoing contains 10,773 words according to the word-counting feature of Microsoft Word for Office 365 and complies with this Court's 13,000-word limitation for briefs.

/s/ Laura McMullen Ford
Laura McMullen Ford
Assistant United States Attorney

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**
**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

Pursuant to Sixth Circuit Rule 30(b), the following filings from the district court's records are designated as relevant to this appeal:

| DESCRIPTION OF ENTRY | RECORD ENTRY NO. | PAGE ID RANGE |
|---|---|---|
| Docket Sheet, Northern District of Ohio, Case No. 1:24CR231 | N/A | N/A |
| Indictment | 3 | 11-13 |
| Superseding Indictment | 27 | 187-91 |
| Stipulation | 67 | 517-18 |
| Motion | 68 | 519-25 |
| Verdicts | 80 | 671-76 |
| Transcript of Trial Held on 8/11/25 | 85 | 704-951 |
| Transcript of Trial Held on 8/12/25 | 86 | 952-1226 |
| Transcript of Trial Held on 8/13/25 | 87 | 1227-484 |
| Transcript of Trial Held on 8/14/25 | 88 | 1485-761 |
| Transcript of Trial Held on 8/15/25 | 90 | 1780-928 |
| Motion | 99 | 2039-62 |
| Opinion | 102 | 2092-116 |
| Judgment | 111 | 2182-88 |
| Notice of Appeal | 114 | 2196-97 |